Argued Jan. 24, decided Feb. 7, rehearing denied March 7, 1911.

## LONG *v.* DUFUR.

[113 Pac. 59.]

PLEADING—FORM—CONCLUSIONS OF LAW.

1. An answer, alleging that at all times and dates herein alleged, and for more than 20 years, defendant was, and is, the adopted daughter and heir at law of the deceased, is a mere conclusion of law.

PLEADING—FORM—CONCLUSIONS OF LAW—CODE PLEADING.

2. A code pleader must state the facts from which the court may draw the conclusion of law and not the conclusion itself.

ADOPTION—NATURE OF PROCEEDING—STATUTORY.

3. Adoption, being a proceeding unknown to the common law, depends upon the statutes of the various states.

EVIDENCE—JUDICIAL NOTICE—FOREIGN LAWS.

4. The courts of Oregon cannot take judicial notice of the statutes of other states.

STATUTES—FOREIGN LAWS—PLEADING—NECESSITY.

5. If a pleader desires to rely upon the statutes of another state, he must set them out, as the court does not take judicial notice of them, especially when in derogation of the common law, and hence one relying upon the adoption statutes of another state must set them out or they are not admissible in evidence.

ADOPTION—STATUTES.

6. The statutes relating to adoption, being in derogation of the common law, must be strictly followed in all matters.

EVIDENCE—PRESUMPTIONS—FOREIGN LAWS—TESTAMENTARY CAPACITY—COMMON LAW.

7. In the absence of evidence or pleading to the contrary, it must be presumed that the common law prevails in Iowa as to testamentary capacity, and hence a married woman who sought to adopt an infant under Code Iowa 1873, §§ 2307-2311, providing that any person competent to make a will may adopt children, must be presumed to lack testamentary capacity, for at common law a married woman could not dispose of real or personal property by will, and hence her execution of adoption articles would be a nullity.

ADOPTION—DECLARATION—ACKNOWLEDGMENT.

8. An instrument of adoption, under Code Iowa 1873, §§ 2307-2311, which required the acknowledgment of the parents in the manner of acknowledgment of deeds, is defective where not acknowledged by a foster father who had previously adopted the infant.

MORTGAGES—RELEASE—MISTAKE—EVIDENCE—SUFFICIENCY.

9. In an action by a married woman against her husband's estate to set aside the release of a mortgage which she held on his property, there being no intervening interests, evidence *held* to show that it was released through mistake.

MR. JUSTICE BEAN dissenting.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit in equity commenced by Marion E. Clinton, widow of Richard Clinton, deceased, to cancel the satisfaction of a mortgage given by him to her prior to their marriage, entered on the margin of the record thereof, on the ground that the satisfaction was entered by a mutual mistake of her and her then husband, and further to foreclose the mortgage. It is alleged in the complaint that the defendant Hattie Mullen and other defendants have, or claim to have, some interest or claim on the real property described in the mortgage, but that the same is subsequent and subordinate to the lien of the mortgage in question. Hattie Mullen resists the decree prayed for, contending in substance that the note and· mortgage sued on were fully paid, and that the satisfaction was entered designedly, without mistake, and she

further asks for a decree that she is the owner of the real property described in the mortgage, claiming that she is the adopted daughter of Richard Clinton, and in that capacity, as his sole heir, is entitled to inherit the same as against the plaintiff, his widow. After the cause was heard, and while it was under advisement in the circuit court, Mrs. Clinton died, and Joel M. Long, as her executor, was substituted as plaintiff. From a decree of the circuit court in favor of Mrs. Mullen, the plaintiff appeals.

REVERSED.

For appellant there was a brief and oral arguments by *Mr. Martin L. Pipes* and *Mr. Hayward H. Riddell.*

For respondents there was a brief and oral arguments by *Mr. John A. Jeffrey, Mr. Raleigh Trimble* and *Mr. John B. Moon.*

MR. JUSTICE BURNETT delivered the opinion of the court.

MR. JUSTICE BEAN dissents.

1. The crucial question in the case is whether or not Mrs. Mullen was the adopted daughter of Richard Clinton, deceased. In support of her case Mrs. Mullen introduced in evidence Chapter 7, Title XV, of the Code of Iowa of 1873, reading as follows:

"OF THE ADOPTION OF CHILDREN.

"Sec. 2307. Any person competent to make a will is authorized in manner hereinafter set forth, to adopt as his own the minor child of another, conferring thereby upon such child all the rights, privileges, and responsibilities which would pertain to the child if born to the person adopting in lawful wedlock.

"Sec. 2308. In order thereto, the consent of both parents, if living and not divorced or separated, and if divorced or separated, or if unmarried, the consent of the parent lawfully having the care and providing for the wants of the child, or if either parent is dead, then the consent of the survivor, or if both parents be dead, or the

child shall have been and remain abandoned by them, then the consent of the mayor of the city where the child is living, or, if not in a city, then of the clerk of the circuit court of the county where the child is living, shall be given to such adoption by an instrument in writing signed by the parties or party consenting, and stating the names of the parents, if known, the name of the child, if known, the name of the person adopting such child, and the residence of all, if known, and declaring the name by which such child is thereafter to be called and known, and stating also that such child is given to the person adopting, for the purpose of adoption as his own child.

"Sec. 2309. Such instrument in writing shall be also signed by the person adopting, and shall be acknowledged by all the parties thereto in the same manner as deeds affecting real estate are required to be acknowledged; and shall be recorded in the recorder's office in the county where the person adopting resides, and shall be indexed with the name of the parents by adoption as grantor, and the child as grantee, in its original name if stated in the instrument.

"Sec. 2310. Upon the execution, acknowledgment and filing for record of such instrument, the rights, duties and relations between the parent and child by adoption shall, thereafter, in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth.

"Sec. 2311. In case of maltreatment committed or allowed by the adopted parent, or palpable neglect of duty on his part toward such child, the custody thereof may be taken from him and entrusted to another at his expense, if so ordered by the circuit court of the county where the parent resides, and the same proceedings may be had therefor, so far as applicable, as are authorized by law in such a case in the relation of master and apprentice; or the court may, on showing of the facts, require from the adopted parent, bond with security, in a sum to be fixed by him, the county being the obligee, and for the benefit of the child, conditioned for the proper treatment and performance of duty toward the child on the part of the parent; but no action of the court in the premises shall affect or diminish the acquired right of inheritance on the

part of the child, to the extent of such right in a natural child of lawful birth."

The reception of this statute in evidence was objected to by the plaintiff on the ground for one thing, that the statute of the sister state of Iowa was not pleaded by the defendant Mullen so as to entitle the same to admission in evidence. The defendant Mullen also introduced in evidence what purported to be copies of two sets of adoption papers relating to her adoption; first, by Cyrus Crooks and Delite Crooks; and, second, by Mary Malinda Clinton and Richard Clinton, which papers, with certificates thereunto annexed, read as follows:

### "ARTICLES OF ADOPTION.

"Cyrus Crooks & Delite Crooks to Hattie Jackson. Know all men by these presents, that we, Albert & Mary Jackson, father and mother of Hattie Jackson, do by these presents consent and agree that Cyrus Crooks & Delite Crooks may have and by these presents do consent that the said Cyrus & Delite Crooks may have from this time on until the period of said Hattie Jackson's majority the sole and absolute possession of said Hattie Jackson, that they may adopt her as their own child the same as though she had been born unto them as their own child. The said Cyrus Crooks & Delite Crooks do hereby consent to adopt the said Hattie Jackson as their own child and agree that she may have all rights and privileges the same as though she the said Hattie had been born unto them. It is further agreed that the name the said Hattie Jackson shall be known by from the date of this article henceforth shall be Hattie Crooks. This article is made in pursuance of the provisions of the Code of Iowa 1873, and it is mutually agreed between the parties to it that the section of said Code of 1873, in relation to the adoption of children shall be a part of this article and the terms of this article governed thereby. All the above named parties being now residents of Cherokee Co., Iowa. In testimony whereof we have hereunto set our hands this 17th day of January, 1876. Albert Jackson. Mary Jackson. Cyrus Crooks. Delite Crooks.

"STATE OF IOWA   }
                 }ss.
County of Cherokee.}

Be it remembered that on the 17th day of January, A. D. 1886, before the undersigned, J. D. F. Smith, a notary public in and for said county, personally came Albert Jackson, Mary M. Jackson, Cyrus Crooks and Delite Crooks, to me known to be the identical persons whose names are affixed to the foregoing instrument and acknowledged the execution of the same to be their voluntary act and deed. Witness my hand and notarial seal the day and year last above written.

[SEAL]                J. D. F. SMITH, Notary Public.

"Filed for record August 23, 1889, at 9 o'clock A. M.

"O. GAGE, Recorder."

Above and foregoing articles recorded in Book 1 of Misc. Records, p. 571.

### "ADOPTION PAPERS.

"Mary Malinda Clinton & Husband to Hattie Crooks, Cyrus Crooks & Elizabeth Delite Crooks. Know all men by these presents, that we, Cyrus Crooks and Elizabeth Delite Crooks, husband and wife, residents of Cherokee, Cherokee County, Iowa, having heretofore adopted as our own child Hattie Jackson under the name of Hattie Crooks, by articles of adoption duly signed, executed and acknowledged by us and the said child's father and mother Albert Jackson and Mary Malinda Jackson, which articles of adoption were filed for record in the office of the recorder of Cherokee, Cherokee County, Iowa, this 23d day of Aug., 1889, do hereby consent that the said Hattie Crooks, a resident of Cherokee, Cherokee County, Iowa, may be adopted as their own child by her natural mother, Mary Malinda Clinton, of Portland, Oregon, and Richard Clinton, of Portland, Oregon, husband of said Mary Malinda Clinton, the said child hereafter to be called and known by the name of Hattie Clinton. Said child was fourteen years old Sept. 28, 1888. And the said Mary Malinda Clinton and Richard Clinton hereby agree to adopt and do adopt as their own child with right of inheritance from each of them, the said Hattie Crooks, to be

hereafter known and called by the name of Hattie Clinton. Witness our hands this 23d day of August, A. D. 1889. Cyrus Crooks. Elizabeth Delite Crooks. Mary Malinda Clinton. Richard Clinton.

"STATE OF IOWA }
                  }ss.
County of Cherokee.}

Be it remembered that on this 23d day of August, A. D. 1889, before me, M. Wakefield, a notary public in and for said county, personally appeared Elizabeth Delite Crooks and Mary Malinda Clinton to me personally known to be the identical persons whose names are subscribed to the foregoing instrument as makers thereof or grantors therein and severally acknowledged the same to be their free and voluntary act and deed. Witness my hand and notarial seal this 23d day of August, A. D. 1889, at Cherokee, Cherokee County, Iowa.

[SEAL]                    M. WAKEFIELD,
          Notary Public in and for Cherokee Co., Iowa.

"STATE OF OREGON }
                  }ss.
County of Multnomah.}

"Be it remembered that on this 11th day of October, A. D. 1889, before the undersigned, a notary public in and for said county, personally came Richard Clinton to me personally known to be the identical person whose name is affixed to the foregoing instrument as grantor or maker and acknowledged the instrument to be his voluntary act and deed and that he executed the same for the purposes therein mentioned. Witness my hand and notarial seal the day and year last above written.

                    JAMES GLEASON,
                  Notary Public for Oregon.

Filed for record Oct. 15th, 1889, at 3½ o'clock P. M.
                  O. GAGE, Recorder.

"STATE OF IOWA }
                  }ss.
County of Cherokee.}

I, John W. Stevens, county recorder in and for Cherokee County, Iowa, do hereby certify that the foregoing is

a true and perfect copy of the record of the articles of adoption of Hattie Jackson by Albert Jackson and Mary M. Jackson and Cyrus Crooks and Delite Crooks, as recorded in Misc. Records, Book No. 1, page 571, by O. Gage, Recorder on Aug. 23, 1889, and of the articles of adoption of Hattie Crooks by Cyrus Crooks and Elizabeth Delite Crooks and Mary Malinda Clinton and Richard Clinton as recorded in Book 1, of Misc. Records of Cherokee County, Iowa, page 608, by O. Gage, recorder, on Oct. 15, 1889. In witness whereof I have hereunto subscribed my name at my office in Cherokee, Cherokee County, Iowa, this 24th day of March, 1909.

JOHN W. STEVENS,<br/>Recorder, Cherokee County, Iowa.

"STATE OF IOWA       } SS.<br/>County of Cherokee. }

I, Wm. Hutchinson, judge of the Fourth Judicial District of the state of Iowa, hereby certify that John W. Stevens, whose signature appears to the above certificate, is at present the recorder of Cherokee County, Iowa, and is the officer having the legal custody of the records of articles of adoption that have been filed for record in said county and state.

[SEAL]                           WM. HUTCHINSON.

Dated at Cherokee, Iowa, April 5, 1909.
Attest: H. V. Taft, Clerk."

The plaintiff objected to these adoption papers on the ground, among other things, that they do not show a legal adoption under the laws of Iowa or any other state. The allegation of the answer of the defendant Mullen respecting her adoption by Richard Clinton, deceased, reads as follows:

"That at all the times and dates herein alleged, and for more than twenty years last past, Hattie Mullen was, and is now, the duly and legally adopted daughter and heir at law of the said Richard Clinton, deceased."

If it were a matter of pleading a judgment or decree of a court, it would be sufficient to state that the same

was duly given or made—this by virtue of the convenient rule of pleading such matters under Section 87, L. O. L.—but even then the judgment or decree should be described in such terms as to identify it clearly. On the other hand, where a contract is to be pleaded, it should be set out either according to its legal effect or in its very words, and, if it is made under a particular statute of another state, good pleading requires that such statute should also be alleged on the principle that in such cases the law of the place where the contract was made is part of the contract. At best the allegation of the answer already quoted is a conclusion of law.

2. A standard rule of code pleading is to state facts from which the court can draw the legal conclusion desired by the pleader.

3. Adoption is a proceeding unknown to the common law and depends upon the statutes of the different states.

4. The courts of this State cannot take judicial notice of the statutes of sister states of the Union.

5. If a pleader desires to rely upon the legislative enactments of another state, it is his duty to set them out by appropriate pleading, especially where such statutes and the proceedings thereunder are in derogation of the common law: *Cressey* v. *Tatom,* 9 Or. 541; *Balfour* v. *Davis,* 14 Or. 47 (12 Pac. 89). Under the rules laid down in these two cases the pleading of the defendant Mullen is clearly insufficient to authorize the introduction in evidence of the statutes of Iowa.

6. But, passing this question, it may be appropriate to consider the sufficiency of the adoption papers on their merits, waiving some important defects in the authentication of the copies before us and bearing in mind the rule that statutes relating to adoption of infants, being in derogation of the common law, must be strictly pursued in all essential particulars: *Furgeson* v. *Jones,* 17 Or. 205 (20 Pac. 842: 3 L. R. A. 620: 11 Am. St. Rep.

808) ; *Purinton* v. *Jamrock,* 195 Mass. 187 (80 N. E. 802: 18 L. R. A. (N. S.) 926).

7. The statute of Iowa above quoted requires that a person must be competent to make a will if he would adopt as his own the minor child of another. It does not appear either in the pleadings or in the evidence what are the requisites of testamentary capacity in the state of Iowa. The Iowa statute further requires that the instrument declaring the adoption shall be acknowledged by all the parties thereto in the same manner as deeds respecting real estate are required to be acknowledged, but the record here is utterly silent as to the law of Iowa on the subject of acknowledgments.

The adoption process in Iowa, according to the statute quoted, is summed up in the language of Section 2310:

"Upon the execution, acknowledgment and filing for record of such instrument, the rights, duties, and relations between the parent and child by adoption shall, thereafter, in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth."

In the absence of pleadings and evidence on that subject, we cannot presume that the persons seeking to adopt the defendant Hattie Mullen were possessed of "testamentary capacity" as defined by the Iowa Code, or that the acknowledgments set out in the adoption papers were sufficient under the laws of that state. Indeed, presuming, as we must in the absence of both pleading and evidence on that subject, that the common law prevails in Iowa as to testamentary capacity, we are forced to the conclusion that the married women mentioned in those papers had not testamentary capacity, for at common law no married woman could by will dispose of either real or personal property. 30 Am. & Eng. Enc. Law (2 ed.) 606.

8. Again, one of the essentials prescribed by the Iowa statute is the acknowledgment by all the parties to the instrument. Conceding, without admitting, that the adoption of Mrs. Mullen by Cyrus Crooks and Delite Crooks was regular, the alleged adoption of her by Richard Clinton and wife is fatally irregular in that, according to the record before us, Cyrus Crooks, her foster father by the first adoption, did not in any manner acknowledge the execution of the second adoption papers. The certificate of acknowledgment shows that the same was acknowledged in Iowa only by Mrs. Crooks and Mrs. Clinton. If they were incompetent under the rules of common law, which we must presume existed in Iowa, to make a will, their execution or acknowledgment of the articles of adoption would be a nullity, and, if otherwise competent, the second act of adoption under which Mrs. Mullen claims was not complete as to Cyrus Crooks without his acknowledgment of the instrument in the manner required for the acknowledgment of deeds.

Many cases have been pressed upon our attention calling for the liberal construction of the act of adoption, but in all the Iowa cases on that subject the acknowledgment and filing for record, as well as the execution of the instrument of adoption, are laid down as essential requisites to complete a legal adoption. As late as 1907, in the case of *Sires* v. *Melvin*, 135 Iowa 460 (113 N. W. 106), the supreme court of that state reviews the authorities, and, while applying liberal construction to acts of adoption where mere details are not essential, yet holds fast to the principle that execution, acknowledgment, and filing for record are three requirements of a valid adoption, neither one of which can be dispensed with. The doctrine of the Missouri cases is also laid before us, of which *Thomas* v. *Maloney*, 142 Mo. App. 193 (126 S. W. 522), is an illustration. In that case the adoption was

upheld on the ground of full performance by the child and of representations made to her by her foster parents that she was their adopted child and that they had legally adopted her, and the court, on the broad principles of equity, held that, after the lapse of many years during which she had duly performed the filial offices of child, the circumstances of the case would render it grossly inequitable to deny the regularity of her adoption. In this case, however, no such features appear, and there is no allegation on that subject. The sole declaration of the answer is that heretofore quoted.

Moreover, as held in the Iowa case of *In re Lamb*, 140 Iowa 89 (117 N. W. 1118: 18 L. R. A. (N. S.) 226), unless the facts relied upon establish the relationship of heir at law, the claimant in question cannot assume that relationship in equity.

The conclusion is inevitable that both as a question of pleading and as a question of evidence the case of the defendant Hattie Mullen on the matter of adoption is not made out.

9. In this view of the case the remaining question as to the alleged mistake in entering satisfaction on the mortgage mentioned is rendered of less importance; but it remains for decision. The great preponderance of testimony in the case shows that the satisfaction was entered by mutual mistake of Clinton and his wife. She had loaned him $6,000 on his note and mortgage in question prior to their marriage. The property consisted largely of city lots, and he was selling them from time to time as the real estate market gave him opportunity. As he made sales she would go with him to the courthouse and enter partial satisfaction of the mortgage, releasing from its effect a given lot in question. She states in substance that on the occasion in question he was in a great hurry and, going with her to the courthouse, called upon

the clerk in charge of the records to enter a partial satisfaction of the mortgage, and, owing to their haste as well as her confidence in her husband, who had never theretofore deceived her, she signed what was, as she supposed, a partial release of the mortgage, when in fact the clerk had stamped on the face of the record full satisfaction of the same. It also appears in evidence that subsequently Clinton spoke of thereafter gradually reducing the mortgage and hoping to get it paid.

In view of these circumstances, especially as there are no intervening interests, the court considers that the allegation of mutual mistake in entering satisfaction of the mortgage is made out by the great preponderance of the evidence.

These considerations lead to a reversal of the decree of the circuit court. A decree of this court will be entered according to the prayer of the complaint, but with this difference, that neither party shall recover costs or disbursements from the other in either the circuit or the Supreme Court.

MR. JUSTICE BEAN dissents.

REVERSED: REHEARING DENIED.