On motion to supplement record. Motion denied April 13, 1926,
submitted on brief March 22, modified May 17, 1927.

## GARRETT K. VAN RIPER, TRUSTEE, v. W. C. DAVENPORT ET AL.

(245 Pac. 316; 256 Pac. 193.)

Appeal and Error—Application for Leave to File With Transcript on
Appeal Quitclaim Deed, Made Long After Decree was Rendered,
will be Denied.

1. Application in equity case for leave to file with transcript
on appeal, quitclaim deed, bearing date long after decree was ren-
dered, will be denied, since to permit it would be practically allow-
ing new evidence to be submitted in reviewing court.

ON THE MERITS.

Fraudulent Conveyances—Wife has Burden of Proof That She is
Innocent Purchaser for Value in Suit to Set Aside Voluntary
Conveyance by Husband.

2. In suit to set aside a voluntary conveyance by husband to
his wife, the latter has burden of proving that she is an innocent
purchaser for valuable consideration, if such question is involved.

---

2. Burden of proof as to fraud against creditors in transfer
from husband to wife, see note in 56 L. R. A. 823. See, also,
12 R. C. L. 668.

*Fraudulent Conveyances—Near Relative must Show Purchase for Value and Without Notice of Fraudulent Intent, Where Conveyance is Attacked as Fraudulent.*

3. Where conveyance made to a near relative is attacked as fraudulent by creditors, burden is on grantee to show that he purchased without notice of fraudulent intent and for valuable consideration.

*Fraudulent Conveyances—Evidence Held not to Establish That Wife was Innocent Purchaser for Value in Respect to Conveyances by Bankrupt Husband.*

4. In suit by trustee in bankruptcy to set aside conveyances made by bankrupt during his lifetime to his wife on ground that they were fraudulently made to defraud creditors, evidence *held* insufficient to establish that wife was innocent purchaser for valuable consideration.

---

Appeal and Error, 4 **C. J.**, p. 731, n. 73.
Fraudulent Conveyances, 27 **C. J.**, p. 790, n. 39, p. 792, n. 61, p. 828, n. 12.

From Klamath: A. L. LEAVITT, Judge.

In Banc.

MOTION TO SUPPLEMENT RECORD DENIED.

For appellant, *Mr. J. H. Carnahan.*

For respondents, *Messrs. Oneill & Irwin.*

McBRIDE, C. J.—1. This was a suit to impeach transfers made by the defendant to his wife the other defendant. In the course of the proceedings, she denied any claim or interest in certain lots involved in the controversy. The case was decided in favor of the defendant, and an appeal was taken by the plaintiff to this court. An application is now on file for leave to file, with the transcript in this case, a quitclaim deed made to this same property by Marie G. Davenport to Mary R. Motschenbacher, which deed bears the date of September 24, 1925, long after the decree was rendered.

We are aware of no theory upon which this can be permitted. An equity case is tried here upon

the evidence submitted in the lower court, and to allow this deed to be filed with the transcript here would be practically allowing new evidence to be submitted in this court. If the cause were still pending in Klamath County, a motion to open up the case and take additional testimony might possibly be allowed, but the deed, and other papers accompanying it, can have no possible relevancy here and the motion is denied.                MOTION DENIED.

### ON THE MERITS.

This is a suit by the trustee in bankruptcy of the estate of W. C. Davenport, bankrupt, to set aside certain deeds, made by said bankrupt during his lifetime to his wife Marie G. Davenport, upon the ground that said conveyances were fraudulently made to defraud the creditors of the bankrupt estate. The facts, which are admitted, are so clearly established as to be indisputable, and are as follows:

On April 26, 1923, W. C. Davenport, who then and for a long time previous had been a jewelry merchant in the City of Klamath Falls, Oregon, was duly adjudged bankrupt in the District Court of the United States for the District of Oregon. Thereafter the plaintiff Van Riper was elected trustee of the estate, filed his bond and qualified as such trustee. On and for some time prior to February 12, 1922, the bankrupt Davenport held in his own name, and of record, lot 6 in block 37, First Addition to Klamath Falls, Oregon, together with two dwelling-houses thereon, the southerly 35 feet of lot 2, block 41, First Addition to Klamath Falls, and the timber claim listed in his schedules and therein described as the south half of the southwest quarter of section 3; west half of the northwest quarter of section 10, township 38 south, range 14 east, W. M.

On October 17, 1919, by a contract appearing in the evidence, he purchased from E. H. DuFault a portion of lots 1, 2, 7 and 8 of block 37, Original Town of Klamath Falls, Oregon. He listed in his schedules in bankruptcy the timber claim, which netted $725 on sale by the trustee, at $3,500.

On February 17, 1922, W. C. Davenport conveyed all of the said real property, except the timber claim, together with the personal property he had bought from Beaudreaux to his wife Marie G. Davenport.

On May 22, 1919, W. C. Davenport signed a statement to the National Jewelers Board of Trade which, he expressly stated over his signature, was made to form a basis for credit with the members of the National Jewelers Board of Trade, in which he claimed to own cash on hand and in bank, $750; notes from customers, $200; accounts receivable, $350; cost value of merchandise on hand, $1,500; real estate and buildings, $10,000; machinery and tools, $250; office furniture and fixtures, $300, or a total of $13,350, against which he owed liabilities amounting to $1,350; in addition to which he had insurance on merchandise of $100 and insurance on other property amounting to $4,250, with a repair trade of $3,000 per year according to the above statement.

At the moment of his bankruptcy, the bankrupt owed debts according to his own schedule amounting to $17,897.97. The claims actually filed and approved by the referee amounted to $18,880, which it may be assumed was the amount which he actually owed at the moment of bankruptcy. The bankrupt's property, including the jewelery store, inventoried at $6,940. The stock in trade sold for $3,000 and the timber claim sold for $725, making the total assets of the bankrupt, which were turned over to the trustee for distribution to creditors, $3,725.

In a letter dated May 22, 1919, being plaintiff's exhibit "M," addressed by Davenport to the National Jewelers Board of Trade, he stated:

"I have one six-room furnished house, one four-room furnished house, both up-to-date and modern; 360 acres of timber land and don't owe a cent on any of them. Have my taxes and improvements paid."

The court found in favor of the defendants on all of the controverted questions and from that decision the plaintiff appealed.    MODIFIED.

For appellant there was a brief and oral argument by *Mr. J. H. Carnahan.*

For respondents there was a brief over the name of *Messrs. Oneill & Irwin.*

McBRIDE, J.—We will address ourselves to the condition of the property situated on lot 6, in block 37, referred to in the foregoing statement. W. C. Davenport purchased this lot in 1908 and upon the southerly half of it he erected a house which then, and up to the date of his death, was occupied by himself and family as a home. It is not claimed that this was purchased otherwise than with W. C. Davenport's own money. Subsequently there was erected a cottage on the northerly half of the lot, which the defendant Marie G. Davenport claims as her separate property by reason of the fact that, with the assent of her husband to the arrangement, the cottage was built thereon with her own means and for her own use and benefit. This lot 6 is the principal portion of the property involved in this controversy. There is no competent evidence of the fact that defendant Marie G. Davenport built this house at her own expense or under an agreement with her husband

that it should belong to her, excepting her own state-
ment, and the fact that no other evidence was intro-
duced on this point is very significant. If she re-
ceived $500 from her mother's estate, her testimony
on this point could easily have been corroborated
by the usual records of the administration of the
estate, and by such checks, drafts or orders in pro-
bate as would have indicated the source from which
she derived the money. If, as she says, she received
the rents which she estimated from $25 to $35 a
month from 1910 to the date of the conveyance of
the property to her by her husband in 1922, some evi-
dence that she received these amounts certainly could
have been available. We learn from the testimony
that there were banks in the City of Klamath Falls
and, if she had been in receipt of these sums of
money, her bank account would have been available
as to testimony tending to show when, where and how
she kept these accounts; but no such testimony was
proffered and the court is asked to believe her bare
statements uncorroborated by a bank account or by
a single check or draft showing that she was carry-
ing on the business, managing this property and re-
ceiving the rentals; and that the sum so received
amounted to $3,840 from the time that the cottage
was built in 1910 until the date of the conveyance of
the property to her by her husband in 1922. The
profits of the faithful servant mentioned in the scrip-
tures, who put his master's five talents at usury,
pale into insignificance beside the profits of this
little cottage.

2–4. It is hornbook law in this state that in a suit
to set aside a voluntary conveyance made by a hus-
band to his wife, the latter has the burden of proving
that she is an innocent purchaser for a valuable con-
sideration, if that question is involved, and where
a conveyance made to a near relative is attacked as

fraudulent by creditors, the burden is on the grantee
to show that he purchased without notice of fraudu-
lent intent, and for a valuable consideration: *Blacka-
bee* v. *Seaweard,* 112 Or. 675 (231 Pac. 146); *Stubling*
v. *Wilson,* 50 Or. 282 (90 Pac. 1011, 92 Pac. 810);
*Walker* v. *Harold,* 44 Or. 205 (74 Pac. 705); *Robson*
v. *Hamilton,* 41 Or. 239 (69 Pac. 651); *Weber* v.
*Rothchild,* 15 Or. 382 (15 Pac. 650, 3 Am. St. Rep.
162); *Marks* v. *Crow,* 14 Or. 382 (13 Pac. 55). We
do not think that the defendant has made such a
showing. In addition to this negative argument
against her present position is the positive fact
shown by her own admissions before the referee in
bankruptcy that she was aware of the statements
made by her husband to the jewelers association in
1919, in the first of which he impliedly represented
himself to be the owner of the whole of the property
in question, and in the second, by which he absolutely
represented himself as the owner without any dis-
closed objection or remonstrance on the part of his
wife Marie G. Davenport. In other words, at that
date when he made these statements, as she must
have known with a view of obtaining present and
future credit upon them, she allowed him to hold
himself out as the owner of lot 6 and the buildings
thereon, which, if her contention is true, would have
been an implied assent to gross fraud and misrepre-
sentation as to present and future creditors. These
statements do not appear to be in any way modified
until just before the day W. C. Davenport became a
bankrupt.

It is true that in her testimony in the Circuit Court
she denied that she knew the contents of exhibits
"L" and "M" and claimed that her statement be-
fore the referee in bankruptcy was a mistake; but
this is incredible as in her testimony before the ref-
eree in bankruptcy she gave a reason for not pro-

testing against her husband making such representations. This change of front, after discovering how vital the admission before the referee was to her case, tends to discredit her later testimony. As to the testimony of Davenport before the referee in bankruptcy, he convicted himself of wilful imposture on his existing and expected creditors and his statements. are worthless.

As to this lot 6 and the two buildings thereon, we are constrained to hold that they were the property of the bankrupt W. C. Davenport, and that this conveyance was made in order to place them beyond the reach of his creditors. The same may be said of the property purchased of E. H. DuFault for which a contract was in existence and which contract was assigned to the defendant Marie G. Davenport and a deed placed in escrow. It is claimed by the defendant that the contract has been forfeited, and she expressly disclaimed any right therein upon the trial. It may be doubtful whether there is much which can be realized out of this property, but the trustee in bankruptcy may have some equities in the property which could be enforced for the benefit of the estate. As to the property consisting of lot 2, block 41, it appears probable that some portion of Marie G. Davenport's money went into it and as to that the decree of the Circuit Court ought to be sustained. It is undoubted that the defendant Marie G. Davenport has a valid claim for a homestead on the southerly half of lot 6 subject to the usual course to be pursued in regard to such a homestead and subject to her homestead rights therein; and to her dower right in all of lot 6, the conveyance to her should be set aside as fraudulent as to creditors; and the same result should follow in respect to the property contracted for with DuFault so far as that course is

121 Or.—31

applicable. As to the other property, the decree
should stand as above stated, and a decree will be
entered here in accordance with this opinion. Under
the circumstances, neither party will recover costs *in*
this court or in the court below.          MODIFIED.