Argued December 6, 1929; affirmed May 1; rehearing denied
July 1, 1930

# CROCKER *v.* RUSSELL ET AL.

(287 P. 224)

*C. M. Hodges* of Portland (Hodges & Gay of Portland, on the brief) for appellant.

*Ralph H. King* and *Edward J. Clark,* both of Portland (McCamant & Thompson, Ralph H. King, and Edward J. Clark, all of Portland, on the brief), for respondent Crocker.

*Platt, Platt, Fales & Smith* of Portland for respondent bank.

BEAN, J. The amended complaint contains the allegations usual to set aside a transfer of property, made with the purpose and intent of hindering, delaying and defrauding creditors.

It was alleged that on August, 1925, and for a long time prior thereto, Frank P. Russell was the owner in

his own right of 100 shares of the capital stock of the Portland Machinery company and that on that date, by a written contract, he agreed to sell said stock to T. H. Comerford and T. J. Gleie for $25,000 and received therefor $7,000 in cash and a promissory note for $18,000, payable at the rate of $1,500 and interest semi-annually; that on June 11, 1926, F. P. Russell was still the absolute owner of the said contract note and collateral and on that date, with the purpose and intent of hindering, delaying and defrauding his creditors, made a pretended assignment and transfer of all his interest in said stock, contract and note to his wife, Carrie L. Russell, without receiving any consideration therefor and that said Carrie L. Russell received the transfer and assignment with full knowledge that such transfer and assignment rendered her husband wholly insolvent and was accepted by her with the purpose and intent of aiding him to hinder, delay and defraud each and all of his creditors.

The defendant, Carrie L. Russell, denied all the charges made against her and alleged as a special defense that during the year 1903 she entrusted to her husband the sum of $5,000 to be invested in the Halladie-Henshaw-Buckley company and that he accepted said sum for her use and benefit and invested it accordingly. On account of the reorganization and change of name of the last named company to the Portland Machinery company, the amount invested was transfered to the Portland Machinery company for stock in the last named concern and that the 100 shares of stock which were on June 11, 1926, held in the name of Frank P. Russell, was but the original $5,000 investment, and the transfer of his property to his wife was but the return of property to Carrie L. Russell, which she had

always equitably owned. To this answer a reply was filed, setting up in detail facts as an estoppel of appellant from asserting such claim.

■ The following appeared upon the trial and was in substance found by the court:

For a long time prior to March 20, 1925, and down to and including August 1, 1925, Frank P. Russell had been and then was the owner in his own right of 100 shares of the capital stock of the Portland Machinery company, a corporation duly organized and existing under and by virtue of the laws of the state of Oregon. The company was organized in 1904. The venture at first did not prove a success, and in 1906 the assets of the company were inventoried and it was found that the $5,000 investment of Mr. Russell had dwindled to $2,870. Thereupon Mr. Russell received 65½ shares of stock of the company for his original investment Subsequent to 1906, upon purchase from time to time, Russell acquired, in his own name, the balance of 100 shares, comprising one-third of the capital stock of the company. Mr. Russell paid for this additionl stock and it was not received as stock dividends. He acted as president of the company, gave practically his whole time thereto, and for all purposes appeared and was evidently known as the owner of 100 shares of stock until the events of 1926. The capital stock was of the reasonable value of $25,000.

About August 1, 1925, Frank P. Russell by a written contract, agreed to sell this capital stock to T. H. Comerford and T. J. Gleie upon the payment of $25,000, payable $7,000 cash, and semi-annual payments of $1,500 each and interest, and a promissory note in the sum of $18,000 at that time executed, evidenced the balance of the purchase price. By the terms of the con-

tract, said contract, stock and note were placed in escrow in the United States National bank of Portland, Oregon, pending the full payment of the purchase price and all payments thereon were to be made to the bank.

At the time this suit was instituted there remained unpaid on account of the principal of said note and contract, the sum of $12,000, with interest thereon from August 1, 1927, at 7 per cent per annum. The note, contract and stock certificates referred to, together with the interest accrued from the 1st day of August, 1927, are held by the bank for the person determined to be entitled thereto in this suit.

On August 1, 1925, the said bankrupt was and thereafter continued to be obligated and indebted to various persons in a sum totaling about $8,500. Among these obligations was a promissory note signed by Frank P. Russell and Alice R. Stoddard, his daughter, dated March 20, 1925, in favor of Mabel V. Lawson, as payee and thereafter she sued said Frank P. Russell and Alice R. Stoddard in the circuit court for Multnomah county and secured judgments against both of them, on October 20, 1927, in the sum of $7,735 and $1,000 attorneys' fees and costs, $58.65.

On November 4, 1927, Frank P. Russell was adjudicated a bankrupt. Thereupon the said judgment and other claims aggregating a total of $9,293.65 were duly allowed against the bankrupt estate and no payments have been made thereon.

There are no other assets of the estate other than the property herein sought to be recovered and the balance unpaid upon the contract to sell said stock, approximately $12,000, and the accrued interest thereon, is necessary to create a fund with which to pay the claims against the bankrupt estate and costs and expenses of administration thereof. The reasonable value of the

stock, contract and note, with collateral at the time of the fraudulent transfer and assignment was and is now $16,500.

About June 11, 1926, Mabel V. Lawson was pressing for a prompt settlement of her note. On that date the bankrupt with the purpose and intent of hindering, delaying and defrauding his creditors, including Mabel V. Lawson, of their respective demands and in contemplation of bankruptcy, if necessary, to escape payment of her debt, made a pretended assignment and transfer of all his interest in said stock, contract and note for the sale and payment thereof, without receiving any consideration therefor, to his wife, Carrie L. Russell, the nominal consideration for the transfer being $1. The transfer rendered him wholly insolvent. Defendant, Carrie L. Russell, received the transfer and assignment with full knowledge that the same rendered her husband wholly insolvent and without other assets with which to meet any of his obligations, and was accepted by her with the purpose and intent of aiding him to hinder, delay and defraud each of his creditors and such creditors were thereby hindered, delayed and defrauded and said transfer and assignment was and is void.

As a part of said attempted transfer the note is indorsed by the bankrupt "pay to the order of Carrie L. Russell. (Signed) Frank P. Russell."

At the time of the transfer Mrs. Russell knew that her daughter was in arrears in the payment of the note and that it had been placed in the hands of an attorney for collection, and that the attorney was urging payment of the note and threatening action thereon. On November 4, 1927, Alice R. Stoddard was on her voluntary petition, duly and regularly adjudged a bankrupt,

her estate consisting of less than $2,500. Mabel V. Lawson, prior to this suit, duly proved her judgment and claim in said bankrupt proceeding of Alice R. Stoddard and the same was regularly allowed and a dividend paid thereon in the sum of $1,254.50 and the bankruptcy estate of Alice Stoddard was duly closed.

The circuit court found, and we concur in the finding, that Carrie L. Russell was not, during the year 1903, or at any other time, the owner of the $5,000, or any sum, which she then, or at any time, entrusted to her husband, Frank P. Russell, to be invested for her benefit.

It appears Frank P. Russell and Carrie L. Russell were married in 1878 in Ohio and afterwards came to California. They had no property when they were married but were in debt $450. They came to Portland in 1902. About that time they owned some real estate in California, which was sold, and Mrs. Russell claims that the $5,000 came from the sale of the home which belonged to her. This was sold with other property for $5,750 in 1903. There was no specific price fixed for the property which Mrs. Russell now claims was hers.

Mrs. Russell had a business of her own and invested some money in real estate. After becoming interested in Portland Machinery company, Frank P. Russell did business independently of his wife on his own credit, and caused every one to believe that the property he managed belonged to him. Mrs. Russell states, "that he never interfered with her business, each minded his own business."

We will not detail much of the testimony. It is shown that in the bankrupt proceeding of Frank P. Russell, December 12, 1927, which was called to the attention of Mrs. Russell, when she was a witness upon the stand, in answer to the question: "In other words,

Mrs. Russell, the money he put into this Holladay-Henshaw-Buckley company was his own money, was it? A. No, that was my own money.'' And then, in response, she testified: ''I don't say it was, I would like to make myself clear about that.'' And then she explained that she had a business of her own out of which she paid everything. ''I saved for a home.''

The whole tenor of the testimony, taken altogether, is that after Frank P. Russell became indebted, particularly to Mrs. Stoddard, upon the note with his daughter, Mrs. Russell fixed her transactions with her husband differently than she had therefore.

On different years Mr. and Mrs. Russell had made income tax statements separately; 65½ shares of the stock in the Portland Machinery company were mentioned in the income tax return of Frank P. Russell. When the $5,000 was first invested in what was afterward the Portland Machinery company, Mrs. Russell appears to have been willing to give or lend it to her husband, as she states. Every element of fraud in the conveyance in question is affirmatively proven by clear and convincing evidence.

■ The following are signs or indicia from which the existence of fraud may be properly inferred, as a matter of evidence: Consideration, transfer in anticipation of pending suit, secrecy or haste, indebtedness of debtor, transfer of all debtor's property, relationship: 27 C. J., p. 483, et seq. All of these signs are present in the case at bar.

Or. L., § 10170, reads thus: ''Every conveyance or assignment * * * made with the intent to hinder, delay or defraud creditor * * * as against the persons so hindered, delayed or defrauded, shall be void.''

■ It is contended by appellant that the circuit court, in taking jurisdiction of the action of *Lawson v. Stoddard & Russell* upon the promissory note, became a court of inferior jurisdiction and that the judgment rendered by such court must be alleged to have been "duly given and made" as provided by Or. L., § 87, for pleading a judgment of a court of officer of special jurisdiction.

The language of the complaint in the present case, in regard to the Lawson judgments in the circuit court, is to the purport, that they "were duly and regularly had and taken therein."

Appellants also contend that the federal bankruptcy court is a court of special jurisdiction and because of this fact plaintiff was required to allege that the order directing institution of this suit was "duly given or made."

The circuit courts of the state of Oregon are courts of general jurisdiction: Constitution of Oregon, art. 7, § 9.

"A suit to collect a debt, set aside a fraudulent transfer, or recover a preference may be brought in a state court by the trustee on his own initiative and responsibility, without first ·obtaining the leave or direction of the court of bankruptcy, and the fact that he proceeds without any order from that court is no defense or valid objection."

Title 11, § 110, U. S. C. A., p. 500, note 680.

■ The district courts of the United States, acting as courts of bankruptcy are, as pertains to all questions of bankruptcy, courts of general jurisdiction. Judgments rendered by such courts, upon questions arising in such proceedings, possess all the incidents and qualities of finality and conclusiveness appertaining to

those of courts of general original jurisdiction: *Edelstein v. U. S.,* 149 Fed. 636 (9 L. R. A. (N. S.) 236) (certiorari denied, 205 U. S. 543, 27 S. Ct. 791, 51 L. Ed. 922); *Grinnell Overland Co. v. Merchants Nat'l Bank,* 191 Iowa 521 (180 N. W. 744, certiorari denied, 257 U. S. 640, 42 S. Ct. 51, 66 L. Ed. 411); *First National Bank v. Pennington,* 126 Or. 10, 14 (268 P. 766).

██ Or. L., § 87, applies only to courts of limited and special jurisdiction: *Rutenic v. Hamakar,* 40 Or. 444, 450 (67 P. 196).

The present suit is not upon the judgment; it was alleged merely by way of inducement. By sub-section (e), title 11, § 110, U. S. C. A. the trustee is authorized to avoid any transfer which a creditor of the bankrupt might have avoided. Such recovery is for the estate: 4 Remington on Bankruptcy (3d Ed.), § 1539; *Peacock v. Fairbairn,* 45 Idaho 628 (264 P. 231); *Van Riper v. Davenport,* 121 Or. 474, 476 (245 P. 316, 256 P. 193). The allegations with respect to the order of the bankruptcy court were not essential to the validity of the complaint, but were matters of inducement not within the scope of Or. Laws, § 87.

██ Error is predicated upon the admission of evidence of the law of California relating to the community property of Mr. and Mrs. Russell without plaintiff having first pleaded such statute. The general rule is, that parties relying upon the statute of another state must plead the enactment and allege such facts as will bring their case within the provisions of the law invoked: *Balfour v. Davis,* 14 Or. 47 (12 P. 89); *Long v. Dufur,* 58 Or. 162 (113 P. 59).

██ Where the defendant did not by her answer disclose the state in which the fund in question was accumulated and that fact appeared only upon the intro-

duction of the evidence, the plaintiff, not having had an opportunity to plead the law of the state where the fund was accumulated, namely California, could introduce evidence of the law of that state and the general rule above mentioned does not apply: *Casner v. Hoskins,* 64 Or. 254, 269, 270 (128 P. 841, 130 P. 55); *Stamm v. Wood,* 86 Or. 174, 181 (168 P. 69).

There was no error in admitting the evidence referred to. The decree of the circuit court was right and it is affirmed.

RAND and BELT, JJ., concur.