Argued September 18; affirmed October 13; opinion corrected
November 24, 1931; motion to recall mandate denied
January 12, 1932

# AMERICAN SURETY CO. OF NEW YORK *v.*
# HATTREM ET UX.

(3 P. (2d) 1109, 6 P. (2d) 1087)

C. W. Robison and Hy Samuels, both of Portland, for appellants.

Plowden Stott and E. B. Seabrook, both of Portland, for respondent.

BEAN, C. J. This suit is brought under section 63-507, Oregon Code 1930, which, in so far as is material, provides that every conveyance or assignment in writing or otherwise of any estate or interest in lands or in goods or things in action, or of any rents or

profits issuing therefrom, and every charge upon lands, goods, or things in action, or upon the rents or profits thereof,

"made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, * * * as against the persons so hindered, delayed, or defrauded, shall be void."

The testimony of Josephine R. Hattrem shows that from time to time since her marriage to defendant Weber A. Hattrem, she advanced to him several sums of money, and that she gave him the proceeds of the sale of some land her father had given her, amounting to $3,500. This is practically the only definite or certain amount which the evidence shows was advanced by her to her husband. In an indefinite way, and as estimates, she claims she advanced a total of some $12,000 to her husband that he might use the same as a part of his capital in his bond business, Hattrem-Nelson company, and afterwards the Municipal Reserve and Bond company, in which Weber A. Hattrem owned a control. In February, 1929, defendant Weber A. Hattrem sold his bond business to W. A. Tyler, receiving therefor the first four items of real property enumerated in the complaint, and also personal property of the value of $73,000. Executions were issued on the judgment to the sheriff of Marion county and the sheriff of Multnomah county, with instructions to levy on the property of defendant Weber A. Hattrem, neither of the sheriffs being able to find any property subject to execution. The two first executions were returned with certificates endorsed thereon that no property could be found. Afterwards an execution was issued on the judgment and $763.03 was realized thereon on September 23, 1930. The $73,000 of the assets which belonged to W. A. Hattrem was therefore

concealed from the creditors, and the result of the conveyance of the real property was to put all of Weber A. Hattrem's visible property out of his name. He testified that after such conveyance he had no property of record. Whatever amount his wife may have advanced for capital and whatever sum the husband contributed himself, the net result was that the real property plus $73,000 was received in liquidation of the venture. The intent on the part of the defendant W. A. Hattrem to hinder, delay and defraud his creditors seems clear.

In August, 1925, the sister Agnes R. Hattrem came from the East and claimed that $5,000 of the deceased father's money in the business of the Hattrems should have increased to $50,000, and wanted to settle for $15,000. In 1929 the sister made trouble for W. A. Hattrem and demanded his arrest.

Weber A. Hattrem, in the application for the administrator's bond, agreed to reimburse plaintiff for all its expenses in connection with the matter, and plaintiff therefor, pursuant to the principle that equity, taking jurisdiction for one purpose, will retain it to do complete justice between the parties, alleged and proved its expenses and sought a judgment therefor in this suit.

Defendant Josephine R. Hattrem is an experienced bookkeeper and has applied her knowledge thereof to her own affairs. She kept in touch at all times with her husband's affairs. She apparently knew that the real property was only a part of the consideration obtained from Tyler for the sale of Hattrem's business. In her testimony, however, she stated, in effect, that she was paying the expenses of the household because her husband was unemployed, implying that he had no assets.

The claim of Josephine R. Hattrem is that she furnished the money to her husband and he converted it into property and she claims a resulting trust therein, and she asserts that the deed from her husband was merely a return to her by him of her advances of money to him.

The lower court found that the conveyance of June 21, 1929, was made with intent to defraud, hinder and delay creditors, and that defendant Josephine R. Hattrem was not a purchaser thereof in good faith.

■ At the time of the conveyance there was a contingent liability on the part of Weber A. Hattrem to the plaintiff, which is as much protected against a fraudulent conveyance as a claim already matured and due when the conveyance is made. It is not material in such cases whether a bona fide claim is due or to become due. 27 C. J. 473, § 113.

■■ Where equity takes jurisdiction for one purpose it will retain it to do complete justice between the parties, and the amount paid by plaintiff on the judgment and the expenses in connection therewith should all be adjusted in this suit: *Shultz v. Shively,* 72 Or. 450 (143 P. 1115); *Templeton v. Bockler,* 73 Or. 494 (144 P. 405); *Oregon-Wash. R. & N. Co. v. Reed,* 87 Or. 398 (169 P. 342, 170 P. 300); *Crossen v. Campbell,* 102 Or. 666 (202 P. 745).

■ On account of the close relationship between Weber A. Hattrem, the husband, and Josephine R. Hattrem, his wife, and the possession by them alone of all the evidence of the transaction, a conveyance of property from the husband to the wife, in such a case, creates a presumption, under many circumstances, that the grantor's intent was to hinder, delay and defraud his creditors. It at least shifts the burden to defendant to prove that the transaction was made in good faith:

§ 63-507, Oregon Code 1930; *Elfelt v. Hinch*, 5 Or. 255; *Davis v. Davis*, 20 Or. 78 (25 P. 140); *Hillsboro Nat. Bank v. Garbarino*, 82 Or. 405 (161 P. 703); *Blackabee v. Seaweard*, 112 Or. 675 (231 P. 146); *Van Riper v. Davenport*, 121 Or. 474 (245 P. 316, 256 P. 193).

It is disclosed by the record that Mrs. Hattrem had notice of every essential fact which would put any person of ordinary intelligence on inquiry. She knew the suretyship contract; that her husband's sister was making trouble concerning his administration of the estate; that her husband and his surety might be called upon to make good the funds of the estate, and, in addition to this, the fact is that this real property her husband received and $73,000 in personal property, was for his interest in the Municipal Reserve and Bond company.

■ The appellant suggests that the plaintiff should satisfy its judgment out of the $73,000 of personal property. This the plaintiff has endeavored to do, but, it being hidden, it was unable to realize thereon except in a small amount. We do not think that it is within the privilege of a party defendant, against whom it is alleged that a conveyance was made in fraud of creditors, and it is sought to set aside such conveyance, to say that the plaintiff should satisfy its claim out of some other property which is also conveyed away or hidden. Such claim cannot be countenanced in a court of equity.

■ There are several badges of fraud in this suit. The transfer, it seems, was made in anticipation of the attack upon Hattrem's administration of his father's estate, which followed soon after the conveyance: *Garnier v. Wheeler*, 40 Or. 198 (66 P. 812). The fact that the conveyance left the husband with no property available to his creditors is a badge of fraud: *Clarke*

*v. Philomath College,* 99 Or. 366 (193 P. 470, 195 P. 822). An excessive effort to make the transaction appear fair and as made in good faith is also a badge of fraud. This is indicated by the attempt of Mrs. Hattrem to give out the inference that her husband, by reason of his unemployment, was wholly without funds, and that the support of the family fell entirely upon her. On the other hand, her husband's sworn statement, in a complaint filed, is that about a year before, in February, 1929, he received, in addition to the real property, a sum equaling $73,000.

The learned trial judge, who heard the witnesses and saw their demeanor upon the stand, was in a better position to judge of the strenuous effort made, if any, to color the testimony, and was in a better position to pass upon the good faith of Mrs. Hattrem, than is this court.

▮▮▮▮ Weber A. Hattrem failed to testify and explain the good faith of the transaction. This is also a badge of fraud: 27 C. J. 494, § 148. The advances claimed to have been made by Mrs. Hattrem to her husband are not clearly shown. The fact that Weber A. Hattrem kept the $73,000 in a place inaccessible to his creditors stamps the transaction as in bad faith.

▮▮▮▮ The testimony of Mrs. Hattrem shows that whatever advances she made to her husband were not made so that he might invest the same for her in real property or with which to buy the property in question. They were made, as she testified, for him to use as capital in his bond and security business and to be added to his assets to form the capital for the business. The law is plainly laid down in *Barger v. Barger,* 30 Or. 268 (47 P. 702), that where a husband, without objection, uses his wife's money, jointly with his own, in his business ventures, no trust in favor of his wife

can attach to the real property purchased with the proceeds of the business. The amount furnished by the wife is indefinite and merely an estimate.

But the proof of a resulting trust must be strong, clear and convincing, and if a part payment of the purchase price is claimed the proof must be clear and concise and show the exact proportion of the whole price paid, and that the payment was made for a specific portion of the whole property. Payments made in common by one asserting the claim and the alleged trustee, unless made in aliquot parts, or payments made out of funds commingled and indistinguishable, are not sufficient to establish a resulting or constructive trust: 3 Pomeroy's Eq. Jur. (4th Ed.), § 1040; *Holohan v. McCarthy,* 130 Or. 577, 587 (281 P. 178). The claim that Hattrem held the real property in trust for his wife has not been established.

 The conveyance of the real property having been assailed as fraudulent, it is incumbent on the grantee, Mrs. Hattrem, to allege and prove that she took the conveyance without notice of the fraud, in good faith, and for a valuable consideration: *Jones v. Beers,* 118 Or. 317 (246 P. 711), and cases there cited. This she has failed to do. On the other hand, it is written large in the record that she well understood the transactions of her husband and was thoroughly conversant with his business and had been for several years. She knew of his business entanglements with his sister, pertaining to their father's estate. The case is too plain to demand a lengthy discussion. The conveyance of the real estate in question was fraudulent and void as to plaintiff.

The decree of the circuit court was proper and is affirmed.

Brown, Belt and Campbell, JJ., concur.

Motion to recall mandate denied January 12, 1932

On Motion to Recall Mandate
(6 P. (2d) 1087)

*Plowden Stott* and *E. B. Seabrook,* both of Portland, for the motion.

*Stanley Myers,* of Portland, opposed.

BEAN, C. J. Counsel for respondent moves to recall the mandate for the purpose of correction, so that a judgment may be entered against Josephine R. Hattrem and her sureties for the sum of $873.23.

This suit was instituted to set aside a fraudulent conveyance made by defendant Weber A. Hattrem to Josephine R. Hattrem, his wife, in order to subject the real property conveyed to the payment of said judgment, the sum of $4,870.97, previously rendered by the Circuit Court of the State of Oregon for Marion county, against Weber A. Hattrem and also to obtain judgment against Weber A. Hattrem for certain expenses and for costs. The circuit court entered a decree setting aside the conveyance subjecting the real property to the payment of $4,870.97, and also rendered a judgment against Weber A. Hattrem for $873.23 and for $103 costs. Josephine R. Hattrem appealed from the decree and judgment of the circuit court as against her. Weber A. Hattrem did not appeal. No money

judgment was rendered in the circuit court against Josephine R. Hattrem. Mrs. Hattrem filed an undertaking on appeal which she and her two sureties executed, which is in the following words:

"Now, therefore, we, Josephine R. Hattrem, appellant, and William Martin of the County of Multnomah, State of Oregon, and J. Guy Strohm, of the County of Multnomah, State of Oregon, sureties, undertake as follows: that the appellant will pay all damages, costs and disbursements which may be awarded against her on appeal.

"And to stay further proceedings and execution on said decree so appealed from, we William Martin and J. Guy Strohm, sureties, in consideration thereof, and of the premises, do hereby undertake that if said decree appealed from, or any part thereof, be affirmed, the appellant will satisfy it so far as affirmed."

Section 7-504, Oregon Code 1930, provides for the undertaking on appeal, and reads:

"but such undertaking does not stay the proceedings, unless the undertaking further provides to the effect following:—

"1. If the judgment or decree appealed from be for the recovery of money * * * that if the same or any part thereof be affirmed, the appellant will satisfy it so far as affirmed."

Section 7-513, subdivision 4, provides:

"If judgment of decree be given against the appellant, it shall be entered against his sureties also, in like manner and with like effect, according to the nature and extent of their undertaking."

Mrs. Hattrem and her sureties undertook to pay the decree against her in so far as it was affirmed. There was no money judgment against Josephine R. Hattrem from which she appealed. The language of the undertaking, "if said decree appealed from, or

any part thereof, be affirmed, the appellant will satisfy it so far as affirmed,'' means that the judgment against the appellant, in so far as affirmed against the appellant, Josephine R. Hattrem, will be satisfied. There being no judgment against appellant Mrs. Hattrem in the trial court from which she appealed and no money judgment against her having been affirmed on appeal, she is not required to pay the money judgment against Weber A. Hattrem in the sum of $873.23, as contended for by respondent upon the motion to recall the mandate.

 The judgment for expenses of $873.23 against Weber A. Hattrem stands in exactly the same condition as the judgment against Weber A. Hattrem for $4,870.97. The judgment and decree of the circuit court was not stayed as against Weber A. Hattrem. There was nothing during the pendency of the appeal to prevent the enforcement of the judgment as against Weber A. Hatrem, but only as against Mrs. Hattrem.

The motion to recall the mandate must therefore be denied. It is so ordered.