Argued May 7, reversed and suit dismissed June 1, 1915.

## GRANT COUNTY BANK *v.* HAYES.

(149 Pac. 473.)

**Fraudulent Conveyances—Rights of Creditor—Knowledge of Fraud.**

1. The mere fact that a judgment creditor had knowledge of the fraud in a conveyance by the judgment debtor would not prevent him from setting aside a conveyance made with that intent, but is valuable only on the question of acquiescence.

Fraudulent Conveyances—Preference to Creditor.

2.   Under Sections 7397–7401, L. O. L., relating to fraudulent con-
veyances, a debtor has the right to prefer one creditor over another.

Fraudulent Conveyances—Consideration—Valuable.

3.   Under Section 7401, L. O. L., protecting a purchaser for valuable
consideration in case of fraudulent conveyances, if the purchaser has
notice of the fraud, it is immaterial what consideration is paid, and
if the purchaser has no notice, it is not necessary that the considera-
tion be adequate if it is valuable.

Fraudulent Conveyances—Rights of Creditor—Knowledge of Trans-
action—Estoppel.

4.   In an action by the assignee of a judgment creditor to set aside
as fraudulent a conveyance from the debtor to his wife, evidence *held*
to show that the judgment creditor, who was an uncle of the debtor,
acquiesced in the sale, thereby defeating the assignee's right of action.

From Grant: DALTON BIGGS, Judge.

In Banc.   Statement by MR. JUSTICE BURNETT.

This is a suit instituted on February 4, 1914, in
which the Grant County Bank, a corporation, a judg-
ment creditor of one H. B. Hayes, would set aside as
fraudulent and void a deed made by the judgment
debtor to his then wife, Della Hayes, September 14,
1908, and subject the land therein described to the
payment of the plaintiff's judgment obtained May 19,
1913.   The complaint charges in substance that the
conveyance was executed by Hayes without considera-
tion and with intent to injure, delay and defraud his
creditors, and particularly his uncle, E. Stewart, to
whom he was then indebted, and that the wife ac-
cepted the conveyance with knowledge of the fraud
and participated in the deceit charged, intending to
hold the land in secret trust for her husband.   The
answer of Della Hayes, who alone defended, denies
the imputation of fraud, and in substance declares that
at the time of her marriage in 1900 she was possessed
in her own right of three milch cows with their calves,
and four head of horses; that these cattle with their
increase were disposed of by her husband in his own

interest, with the result that about September 14, 1908, the date of the conveyance to her, he was indebted to her in about the sum of $1,500, the reasonable value of the cattle and increase resulting from their management for the eight years of the then married life of the parties to the deed, in consideration of which he conveyed the real estate in question to her and she discharged him from all liability on account of the property belonging to her of which he had disposed. This in turn is challenged by the reply. Although there was no pleading about her having a mere lien upon the premises for the value of the property appropriated by her husband, the Circuit Court made a decree impressing upon the realty a paramount lien in favor of the answering defendant for $375, with interest at 6 per cent per annum from September 14, 1908, set aside the conveyance, and directed a sale of the property and the application of the proceeds of such sale to the payment of the lien mentioned; the surplus, if any, to be applied to the judgment for the satisfaction of which the plaintiff would sequester the property. Della Hayes appeals. REVERSED. SUIT DISMISSED.

For appellant there was a brief and an oral argument by *Mr. A. D. Leedy.*

For respondent there was a brief and an oral argument by *Mr. J. E. Marks.*

MR. JUSTICE BURNETT delivered the opinion of the court.

It appears from the evidence that E. Stewart was the uncle of H. B. Hayes, the husband of Della Hayes, they having been married in 1900. E. Stewart is also a director of the plaintiff bank. Hayes had a home-

stead upon which patent was issued April 2, 1908. Stewart had advanced to his nephew $1,150, with which to purchase the additional property in question for which the nephew gave his note to Stewart October 20, 1905. It was without dispute that in 1900 the wife was the owner of three milch cows and their calves, besides four horses. Her husband managed the cattle, being engaged to some extent in stock-raising, and from time to time disposed of the increase without making account thereof to the wife. It is beyond controversy that as between the husband and wife she had a claim against him at the time of the conveyance for the cattle belonging to her of which he had disposed. The contention on that point is about the reasonable value of the personal property mentioned. Neither party gives any accurate figures on the number of cattle. In that feature the evidence is all estimate. As above stated, the Circuit Court found the reasonable value of that livestock to be $375. The uncle, E. Stewart, seems to have advanced other amounts of money to his nephew, the husband, after the execution of the deed. The wife testifies that at the time that instrument was made the uncle was solicitous for a payment on the nephew's indebtedness; that her husband proposed to her to turn over her cattle as a payment on the amount owing to the uncle; that she demurred to this and was unwilling to give up her property in payment of her husband's debts, but that finally she agreed to do so on condition that he convey to her the land in question. She further deposes that she had no knowledge of any indebtedness of her husband except that to the uncle besides her own claim; that with her husband she consulted the uncle on the subject, and that he agreed the transaction should take place in that manner, the cattle to

be turned over to the uncle to be applied on the indebtedness of the nephew, who in turn should convey the land to his wife. As stated, the conveyance was made September 14, 1908, and recorded in the deed records of the county December 23, 1908. The husband, although contradicted by his wife, in this particular, testifies that he was then about to engage in the mercantile business in Dayville, and not being skilled in that vocation he agreed with his wife that they would put the property in her name, so that, should business prove disastrous, or should the uncle die, his health being then infirm, they could gain time to pay off the indebtedness without being deprived of their home. He says in his testimony substantially that he was fearful he could not deal with his uncle's administrator or executor on as favorable terms as with the uncle himself, who, it seems, was very indulgent as a creditor.

The husband had other property, and afterward became largely indebted directly to the plaintiff bank, and in March, 1913, it instituted an action against him for the moneys directly due it from him. On the following day it brought another action against the husband on the indebtedness then due to the uncle, E. Stewart, the latter having assigned the notes to the bank for collection. Judgments were recovered in both actions and the other property of the husband was bid in on execution sale for the full amount of the bank's separate judgment, and this suit was instituted to subject the property included in the deed to the wife to the satisfaction of the judgment which the bank recovered as assignee of the uncle. The husband and wife separated in December, 1912, and she procured a divorce from him, since which time he has remarried. The uncle testifies that he knew nothing

of the transfer of title until after it was made. He says, however, that he learned of it late in the year 1908. Another nephew testifies that at the time of the transaction the uncle told him that the transfer was about to be made. It appears, also, by the testimony of the latter nephew that he was engaged in handling some of the cattle of E. Stewart on shares at that time, and that some of those belonging to the wife were transferred into the band of which he had charge.

1. It is true that the mere fact that the creditor had knowledge of the fraud would not prevent him from setting aside a conveyance made with that intent. The only value to be given to the knowledge imputed to the then creditor is on the question of his acquiescence in the arrangement, and further illustrating the good faith of the parties to the deed as tending to show that the transaction was not done in a corner or secretly.

2, 3. The substance of the situation is that at the time the deed was made the husband was in debt to his uncle and also to his wife. He had a right, so far as that was concerned, to pay her, the wife, to the exclusion of his other creditor, the uncle. The precept of Section 7397, L. O. L., is in substance that every conveyance or assignment in writing or otherwise of any estate or interest in lands made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with the like intent, as against the persons so hindered, delayed or defrauded, shall be void. Section 7400, L. O. L., states that:

"The question of fraudulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact, and not of law."

Section 7401, L. O. L., reads thus:

"The provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

Under the provisions of this section it would matter not how full or adequate the consideration might be which the grantee paid for the conveyance if she had previous notice of the fraudulent intent of her grantor. On the other hand, the statute does not give any heed to the mere adequacy of consideration. If without notice of her grantor's fraudulent purpose she acquired the land for a valuable consideration, her title is protected by the terms of Section 7401, L. O. L. It is apprehended that gross insufficiency of price might be considered as a circumstance tending to prove fraud in case there was any element of deceit or concealment. So far as that is concerned a person having a right to sell property may at his option sell it for much less than its actual value, and that alone would not be sufficient to nullify the conveyance in favor of some other claimant.

4. The weight of the testimony in our estimation shows that the uncle was cognizant of the making of the deed. The wife says that she and her husband consulted with the creditor at that time and he approved it. The other nephew testifies that his uncle told him of the transaction at the time it was about to be accomplished. The deed was placed on record and the transaction stood for some five years before

it was attacked, and then the creditor did not attack it himself, but delegated the matter to the bank of which he was a director. The plaintiff here stands in no better plight than its assignor, the original creditor. It is worthy of remark that this proceeding followed closely upon the dissolution of the marriage between the debtor nephew and his wife, at her suit.

The disposition of the cattle was a matter between the husband and wife resulting in a just claim on her part against him which he had a right to prefer even against his uncle. It appears that some at least of the plaintiff's cattle went into the possession of the uncle, but whether they did or not cannot affect the indebtedness of the husband to the wife, if in fact, as it appears without dispute, he used the property for his own purposes.

In brief, the husband was indebted to his wife. He conveyed to her the property. The transaction was without concealment, and being brought home to the knowledge of the uncle he, by his long inaction, must be held to have acquiesced in the same. No fraud can be imputed to a transaction where the one attacking it has practically assented to it and adopted it. The element of acquiescence distinguishes it strongly from a case where one is defrauded before his eyes, however unwillingly. It is apprehended that if the domestic relations of the nephew and his wife had continued harmonious we would have heard nothing of this proceeding. Having a right to prefer his wife creditor, the husband did so openly, and the uncle creditor having acquiesced in it for so long with knowledge of the situation, cannot now justly claim that the preference in her favor should be ignored and her property taken to pay his debt.

The decree is reversed, and the suit dismissed; neither party to recover costs or disbursements from the other.              REVERSED.   SUIT DISMISSED.