Argued January 29, affirmed April 7, 1925.

# G. W. FLETT *v.* F. W. WILLEFORD.

(234 Pac. 802.)

**Frauds, Statute of—Estate for Years is an "Interest in Real Property."**

1. Though an estate for years in real property is a chattel interest, yet it is an "interest in real property" and is governed by Section 808, Or. L.

**Partnership—Purchaser of Part Interest in Partnership Property Becomes Tenant in Common With Remaining Partner.**

2. A sale by one partner of his interest in partnership property, dissolves partnership, and purchaser and remaining partner become tenants in common.

**Frauds, Statute of—Plaintiff Held not to have Acquired Interest in Realty by Purchase of Interest in Personalty, Where No Evidence of Written Agreement Produced.**

3. Plaintiff, alleging to have purchased half interest in partnership property consisting of personalty and as an incident thereto the acquisition of part ownership of a lease for years of land on which the personalty stood, must meet requirements of Section 808, Or. L., by producing written evidence thereof, and, where he produced no such evidence, it must be concluded that he was not the owner of any interest in the real property.

**Tenancy in Common—Tenants in Common of Real Property cannot Acquire Paramount Title and Exclude Cotenant Without First Abandoning Tenancy.**

4. One tenant in common of real property cannot acquire a paramount title and rely on it to exclude his cotenant, without first surrendering all title to his cotenant and abandoning the tenancy in common.

———————

1. See 25 R. C. L. 535.
2. See 20 R. C. L. 954.
4. See 7 R. C. L. 857.

Tenancy in Common—Tenant in Common of Personalty Held Authorized to Acquire Interest in Realty on Which Personalty Stood to Exclusion of Cotenant.

5.  Where plaintiff alleged the acquisition of part ownership in lease of realty by purchase of part interest in partnership consisting of personalty, but produced no written evidence of his alleged interest in realty as required by Section 808, Or. L., and at most became only a tenant in common with defendant as to such personalty, and pleaded no estoppel preventing defendant from acquiring an interest in such realty, *held* that defendant, as tenant in common of personalty, had right to accept lease of such realty to exclusion of plaintiff.

See (1) 27 **C. J.**, p. 210, § 179.   (2) 30 **Cyc.** 605, 653.   (3) 27 **C. J.**, p. 319, § 404.   (4) 38 **Cyc.** 40.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief over the names of *Mr. John F. Logan* and *Mr. J. J. Fitzgerald* with oral arguments by *Mr. Fitzgerald* and *Mr. Fred Heilig.*

For respondent there was a brief and oral argument by *Mr. Charles E. Lenon.*

BURNETT, J.—The charging part of the complaint reads as follows:

"That on or about the 10th day of November, 1919, plaintiff and defendant became equal partners in an amusement business in the County of Multnomah, Oregon, and as such partners owned and operated an amusement hall known as the Midway Skating Rink, located near the intersection of Union Avenue and Columbia Boulevard, Portland, and ever since have been and now are engaged at said place in said business;

"That from the beginning of said partnership plaintiff has faithfully performed his duties as a partner but defendant has committed various breaches

of the partnership relation and has exercised bad faith and has been guilty of misconduct so serious as to injure the success of the said business and has been guilty of practices which disqualify him as a partner of said business; that said acts of bad faith and misconduct consist more specifically as follows:

"1. Defendant, without consulting plaintiff, has undertaken to lease the premises, the property of said partnership, and has failed to make to plaintiff a proper accounting of the proceeds from said lease;

"2. Defendant, having so leased said premises and said lease having not yet terminated, has entered into negotiations without consulting plaintiff to lease said premises to another tenant although the present tenant was given an option for an extension of his tenancy and has exercised said option, which course of conduct on the part of defendant is likely to bring litigation upon said partnership;

"3. Defendant, secretly, and without consulting plaintiff, undertook to and did obtain a renewal of the ground upon which the business of said partnership is located and obtained said lease in his own name and declares that said lease is his own personal property and that at the termination of the present ground lease he proposes to oust plaintiff from the premises;"

The remainder of that pleading is devoted to the expression of the plaintiff's fears that the defendant will incur obligations in the name of the partnership for the purpose of embarrassing the plaintiff and that it is necessary that an injunction be issued to forbid any such transaction. Whether the injunction was in fact issued does not appear from the abstract. The only allusion to partnership property is found in the phrase in the first paragraph "and such partners owned and operated an amusement hall known as the Midway Skating Rink, located near the intersection of Union Avenue and Columbia Boulevard, Portland," and the further phrase in the second

paragraph reading thus: "Defendant * * has under-
taken to lease the premises, the property of said
partnership." Well may it be doubted whether this
constitutes any assertion of title to real property or
to any estate therein. The complaint is denied, ex-
cept that the defendant admits that the plaintiff and
defendant have been operating the amusement hall
described in the first paragraph since on or about
the tenth day of November, 1919; that defendant
had obtained a lease to the property referred to in
the second paragraph and that the lease is the de-
fendant's personal property. The new matter in
the answer avers that the plaintiff purchased an un-
divided one-half interest in and to the said building,
described in the leases hereinafter mentioned as re-
movable at the end of the term, and in and to said
fixtures and appliances and is now the owner and
holder thereof; that the plaintiff did not purchase
the lease, nor was the lease or any portion or interest
thereof assigned to the plaintiff or his immediate
predecessors in interest, and that the said lease is
owned by the defendant herein and one Ada Wille-
ford. The defendant arrives at the conclusion that
he and the plaintiff became owners in common of
the personal property only. The defendant likewise
avers many things showing an intentional neglect of
the business by the plaintiff rendering further rela-
tions with him undesirable. The reply reads as fol-
lows:

"Comes now the plaintiff and replying to defend-
ant's answer and to the further and separate answer
in defense and cross complaint denies each and every
allegation therein contained and the whole thereof
except as said allegations are sustained by the allega-
tions in plaintiff's complaint but admits that he pur-
chased a one-half interest in said partnership from

A. A. Pelletier and admits that the property of said partnership should be sold and the proceeds distributed equally between the parties hereto."

The parties are agreed that the continuance of the relation between them, whatever it may be, should be dissolved and the property in question whether owned by them as partners, tenants in common, or as engaged in a joint adventure, should be sold and the proceeds divided equally between them. The bone of contention is a lease, said in the evidence but not in the pleadings, to have been executed by Nancy M. Finke, the owner of the fee, to J. Melich and F. W. Willeford on December 30, 1918, for three years from October 1, 1918, to October 1, 1921, describing the property to be leased, thus:

"That part of Lots 6, 7 & 8, Block 28, which is covered by the building used as a skating rink at the present time."

1. This lease contains a privilege to remove the building when possession of the premises is given up to Mrs. Finke. Although an estate for years in real property is a chattel interest, yet it is an interest in real property. As applied to this case, the oft-quoted Section 808, Or. L., reads thus in part:

"In the following cases the agreement is void unless the same or some note or memorandum thereof expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law: * *

"6. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein;

"7. An agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent be in writing; * * "

Constructing an abstract, so to speak, from the written documents in evidence, we find: First, a bill of sale from A. A. Pelletier to F. W. Willeford covering "1 skating rink, skates, organ, canvas top and all other property included in rink." In this transfer Pelletier covenants that he is the owner of one-half interest in the above property and that he will warrant and defend the same against the lawful claims of all persons whomsoever. This instrument is dated November 29, 1918. Second, is the lease from Nancy M. Finke to J. Melich and F. W. Willeford above mentioned under date of December 30, 1918, covering the property there named for three years from the preceding October 1, 1918, to October 1, 1921. Third, a transfer whereby J. Melich and wife, "grant, bargain, sell and convey" to Mrs. Ada Willeford all the following described property to wit:

"All my right, title and interest in and to an undivided one-half interest in the skating rink situated on Lots 6, 7 and 8, in Block 28, at the intersection of Union Avenue and Columbia Boulevard in Multnomah County, Oregon; this includes an undivided one-half ownership in all skates, musical instruments and each and every other article of personal property of every name kind and nature whatsoever appertaining or belonging to the skating rink on the above premises."

This also contains a covenant of warranty and is dated February 19, 1919. Fourth, there is a like instrument from A. A. Pelletier to G. W. Flett being substantially the same description as that to Ada Willeford, dated November 10, 1919. Pelletier, the immediate grantor under whom the plaintiff Flett

claims, does not connect himself with the title to any lease by any writing within the requirements of Section 808, Or. L., above quoted. On the contrary, the defendant by the proper documents as above quoted traces title from Nancy M. Finke to himself and Melich and from Melich and wife to the defendant's wife Ada Willeford.

The plaintiff relies upon two documents which are here quoted:

"Oregon Business and Financial Agency
"448 Morgan Bldg.
"Portland, Ore.,

"Received $500.00 of Mr. J. G. W. Flett as final deposit on the business, equipment, building, organ, skates & other equipment, located on the Interstate Highway & known as the Midway skating rink & dance hall.

"The above is a deposit for a half interest with Mr. F. W. Williford, Mr. Williford agreeing to take Mr. J. G. Flett as a partner to conduct the above mentioned business.

"The balance of $3000.00 is to be paid as follows, $1250.00 on Nov. 20th 1919 and $100.00 per month thereafter, without interest, until paid, more or less.

"The above mentioned property is free from all incumbrances.

"M. S. SILVERMAN.
"G. W. FLETT."

The next document relied upon by the plaintiff is as follows:

"Oregon Business and Financial Agency.
"448 Morgan Bldg.
"Portland, Ore.,
"Nov. 10, 1919.

"Recieved of G. W. Fleet Two Thousand $2,000 as first payment on the purchase price of Thirty-five Hundred ($3500.00) covering and conveying and un-

divided one-half interest in the rink and dancing
pavillion; known as the
                Midway Skating Pavillion.
located near intersection of Union Ave. and Columbia
Blvd., Multnomah County, Oregon. Said one-half
interest now owned by A. A. Pelletier. The balance
of said purchase price of Fifteen Hundred ($1500)
to be paid in monthly installments of not less then
One Hundred ($100) Dollars. It is understood that
said purchase price of $3500.00 covers and conveys to
said G. W. Fleet, and undivided one-half (½) interest
in said "Midway Dancing Pavillion" the other half
interest being retained and owned by F. W. Williford.
        "OREGON BUSINESS & FINANCIAL AGENCY.
                        "448 Morgan Building.
                "By M. S. SILVERMAN,
                    "Agent for A. A. PELLETIER."

There is utterly no line of writing conferring any
authority upon Silverman, either by the Oregon Busi-
ness and Financial Agency or by Pelletier to act as
agent for the latter, even if it be conceded that the
instrument of November 10, 1919, just quoted, at-
tempted to convey any interest in real property.
Moreover, according to the only instrument appear-
ing in the record, as already quoted, Pelletier had
already on November 29, 1918, conveyed to F. W.
Willeford the property in question. There is nothing
in the way of competent proof under the statute to
show that Pelletier, the immediate grantor of the
plaintiff under the instrument dated November 10,
1919, had ever acquired any interest in the property,
after his conveyance to Willeford almost a year
previous. It is without dispute that when requested
to sign the document without date, quoted above, con-
taining the clause "Mr. Willeford agreeing to take
Mr. J. G. Flett as a partner to conduct the above
mentioned business," Willeford refused to sign the

same and declared he would not enter into any partnership with Flett.

2. Conceding, for the moment, but contrary to the record evidence in the case, that Willeford and Pelletier had been partners at the time Flett paid to Silverman the $500 mentioned, the effect of the sale of the interest of Pelletier in the partnership property to the plaintiff was to dissolve the partnership with the result that the plaintiff and defendant became tenants in common thereof. This is the declaration of Mr. Justice RAMSEY in *Eilers Music House* v. *Reine,* 65 Or. 598, 605 (133 Pac. 788), citing in support thereof *Marx* v. *Goodnough,* 16 Or. 31 (16 Pac. 918).

3. If the plaintiff would establish a partnership and as an incident thereto the acquisition of ownership in an interest in real property when the same is denied, it is incumbent upon him to meet the strict requirements of Section 808, Or. L., by producing written evidence fashioned according to the rules laid down in that section. It must be concluded therefore in the absence of such evidence that the plaintiff was not the owner of any lease or interest in the real property.

Passing the question of whether Pelletier had any title in the property which he could convey to the plaintiff, yet no more is shown than that the latter acquired some interest in some personal property including the building which the tenants had the right to remove upon the expiration of their estate. The evidence shows that the plaintiff and defendant operated the establishment together until the filing of this complaint April 30, 1921. The lease, in which plaintiff claims an ownership expired on October 1, 1921. As to that document, the term thereof having

expired, the case has become a mere academic question and does not require further attention.

In evidence, however, there is an agreement under date of March 29, 1921, between Nancy M. Finke and Frank Willeford, the defendant here, by which Mrs. Finke leases to the defendant from October 1, 1921, until October 1, 1926,

"That part of lots 6, 7, & 8, Block 28 which is covered by the Building used as a Skating Rink at the present time. It is further agreed that the building may be removed at the expiration of this lease."

4. It is not averred in the complaint that this lease is the property of the partnership. The conduct of Willeford in procuring the lease is set down as grounds for a dissolution of the partnership. It is true as a general principle that where tenants in common of real property are in possession thereof one of them cannot go out and buy a paramount title and rely upon the same to exclude his cotenant without first surrendering all title to his cotenant and abandoning the tenancy in common. In that manner he might become a hostile tenant by reason of the paramount title which he has purchased. So to speak, he would raise the hostile flag and give notice of his hostility to his former cotenant. There is no dispute on this principle. The question is, does it apply to the present contention?

5. We have no showing that the plaintiff has proven the acquisition of any interest in the real property. The utmost that he can claim is that he became a tenant in common of the personal property. Such a state of the title does not compel the defendant to provide a better title or an interest in realty for the benefit of his alleged partner. The plaintiff is entitled to protection of his interest in the personalty.

He has no interest in the realty to protect. It may be true that the building which is treated as personalty by the deeds would be of little use to either of the parties without the land upon which it stood or some estate therein, but we are not concerned about whether the plaintiff purchased profligately or frugally. In the absence of any pleading of estoppel we cannot establish an estate for him greater than that which ʻhe proves under the statute. The owner of the fee had a right to give a new lease to the defendant alone and there is nothing in the record forbidding him to accept it. No estoppel is pleaded whereby the defendant is to be prevented from acquiring an interest in the realty on which the building stood. On the contrary it is practically without dispute that when Flett appeared on the premises in company with Silverman, the defendant told him to be careful what he was buying. All that was said or done by the defendant as disclosed by the evidence is perfectly consistent with the relations of tenancy in common of the personalty involved.

In brief, the plaintiff has not proven by any competent evidence that he acquired any interest in the real estate, nor has he pleaded or proven any estoppel preventing the defendant from denying that the plaintiff had any interest in the realty. Both parties are agreed that whatever the relation between them is in fact, it should be dissolved and that the property of the concern, be what it may, should be sold and the proceeds divided between them. The court below with both parties and their witnesses before it and the documents in evidence determined that the plaintiff had no interest in the lease, gave judgment for the plaintiff for $170.98, admitted in evidence to be the net share of plaintiff in the proceeds

of the business *pendente lite,* and decreed that the personalty should be sold by the sheriff of Multnomah County; that the proceeds be applied to the expenses of the suit and the remainder divided between the parties equally. This conclusion is a correct one on the whole record and is affirmed, notwithstanding the plaintiff's appeal.    AFFIRMED.

McBRIDE, C. J., and RAND and COSHOW, JJ., concur.