Motion to dismiss appeal denied September 14, 1927, argued June 27, reversed September 25, 1928, rehearing denied February 5, 1929.

## NELLIE E. BARHAN *v.* VERA BOGARD ET AL.

(270 Pac. 762.)

For appellants there was a brief over the name of *Messrs. Carson, Carson & Carson,* with oral arguments by *Mr. John H. Carson* and *Mr. Allan H. Carson.*

For respondent there was a brief over the name of *Mr. Barnett H. Goldstein,* with an oral argument by *Mr. E. M. Morton.*

RAND, C. J.—This is an action in ejectment brought by plaintiff, the widow of A. Barhan, deceased, to recover dower in certain real property described in the complaint. She recovered judgment for the relief demanded in the complaint, and defendants appealed.

The facts out of which this action arose are set forth in a written stipulation signed by the parties and, so far as material to the questions involved here, are as follows: On June 16, 1906, A. Barhan, plaintiff's deceased husband, entered into a written contract with Z. T. Bogard, deceased, the father of the two defendants in the action, for the exchange of the lands involved in this action, which at that time belonged to Barhan, for other lands belonging to Bogard. Bogard tendered and Barhan refused performance of the contract. Bogard instituted suit to enforce specific performance of the contract, naming Barhan alone as the defendant in the suit. Shortly after the execution of the contract by Barhan and Bogard and before the commencement of the suit, Barhan made a voluntary conveyance to his mother, who resided in the State of Indiana, of the lands which he had contracted with Bogard to exchange and plaintiff, the wife of Barhan, joined in the execution of said deed. Barhan took the deed to the recording office and had the deed recorded without the knowledge of his mother and without her having authorized or given assent to the record and at the time instructed the recording officer to forward by mail said deed to his mother which was done. Upon learning of Barhan's said action, Bogard filed an amended complaint making Barhan's mother a party defendant to the suit. The suit was twice tried and twice appealed to this court

and upon each trial in the lower court Bogard obtained a decree of specific performance of the contract. Upon the first appeal the decree was reversed because of an insufficient description of the property in the complaint. Upon the second appeal (see *Bogard* v. *Barhan,* 56 Or. 269, 108 Pac. 214), the decree of the lower court was affirmed and by said decree a specific performance of the contract by Barhan was decreed.

Pursuant to said decree the title to the lands contracted to be exchanged by Barhan became vested in Bogard and Bogard himself completely performed the contract upon his part and the exchange of the lands contracted for was thereby consummated between the parties. In addition thereto and by the terms of the decree, Barhan's mother was required to and did make, execute and deliver to Bogard a good and sufficient deed conveying the premises in controversy here to Bogard, which deed was recorded and is now of record in Marion County where the lands are situate. Bogard has since died and the real property now in question has descended to his children, the defendants in the action. Barhan has also died and his wife now claims a right to a dower interest in the real property conveyed by herself and her deceased husband to his mother and which by said decree and by the deed to Barhan's mother is now the property of the defendants in the act.

The basis upon which plaintiff asserts this claim is that since the deed from Barhan and wife was adjudicated to be fraudulent and void in *Bogard* v. *Barhan, supra,* plaintiff's right to dower in the land has never been divested, and this seems to be the

ground upon which the lower court gave judgment to plaintiff.

In the case just referred to this court, speaking through Mr. Chief Justice MOORE, said:

"The remaining question is whether or not the execution of the deed by A. Barhan to his mother was a scheme adopted to circumvent a specific performance of the agreement herein. That he was indebted to his mother in the sum claimed is evidenced by the promissory notes offered in evidence. We do not think, however, that she was urgently insisting upon the payment of these obligations or the giving of security therefor, and feel satisfied that he executed to her the deed in question, thinking it would bar a recovery herein. His deed was not delivered to his mother, but placed on record, evidently without her knowledge, and, this being so, no title passed thereby."

1. We think that it is the settled law of this state that where the object, tendency or effect of a conveyance is to defraud another or where the intent of the conveyance is to avoid some duty or debt due by or incumbent upon the party making it, such conveyance is fraudulent and absolutely void as against creditors and subsequent *bona fide* purchasers if they see fit to impeach it, but not otherwise, and that, although such conveyance is void as regards purchasers and creditors, it is valid as between the parties. This was the rule at common law and has not been changed by statute. This rule is stated in 27 C. J., at page 463, as follows:

"Under the English statutes of 13 Elizabeth and 27 Elizabeth, as well as under most of the statutes in the United States, which are based thereon, a fraudulent conveyance is absolutely void as to creditors and subsequent *bona fide* purchasers, both in equity and

at law, if they see fit to impeach it, but not otherwise; but, although thus void as to creditors and purchasers, it is, when executed, valid and binding as between the parties and their heirs and representatives; and it is void as to creditors only so far as to enable such as are prejudiced thereby to enforce their demands against the grantor."

Thus, it was held in *Reichart* v. *Castator*, 5 Binn. (Pa.) 109 (6 Am. Dec. 402), that a deed made to defeat and defraud creditors is void as against creditors, but not so against the grantor himself or his children.

Our statute, Section 10170, Or. L., provides that "every conveyance * * made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, * * as against the persons so hindered, delayed, or defrauded, shall be void."

2. Plaintiff was one of the grantors in the conveyance of the lands in question to Barhan's mother and as such grantor, the deed being fraudulent, as to her, one of the grantors, it is valid and binding, and, in terms, conveyed away and extinguished her right of dower in the lands. See *Burgett* v. *Burgett*, 1 Ohio, 469 (13 Am. Dec. 634), where it was held that a voluntary conveyance made without consideration, and for the purpose of defrauding creditors, is not void except against creditors or subsequent purchasers. In *Clapp* v. *Tirrell*, 20 Pick. (Mass.) 247, it was held that a conveyance made to defraud creditors is good as against the grantor and his heirs. In *Worth* v. *Northam*, 26 N. C. 102, it was held that, though a conveyance may be fraudulent as against creditors, it is good against the grantor and tort-feasors, not claiming as creditors. In *Sherk* v.

*Endress,* 3 Watts & S. (Pa.) 255, it was held that a contract which is fraudulent as to creditors is binding upon the parties themselves. To the same effect see *Hendricks* v. *Mount,* 5 N. J. Law, 738 (8 Am. Dec. 623). In 12 R. C. L. 473, the authors say:

" * * But the unanimous verdict of the decisions is that a voluntary or fraudulent conveyance is valid between the parties, and in fact as to the whole world, except those within the protection of the statutes; that is, the word 'void' in the statutes has been uniformly construed to mean 'voidable' and 'voidable' only at the instance of those embraced within the meaning of the terms 'creditors and others' or 'purchasers.' "

But independently of these considerations, the rule is as stated by Tiffany in his work on the Modern Law of Real Property, Volume 1, bottom paging 427, as follows:

"While, by the ordinary rules applicable to dower, if the husband, during coverture, exchange one parcel of land for another, the wife would be entitled to dower in both parcels, as land of which he was seized during coverture, an exception has been made in regard to lands so given and received in exchange; it being held that the widow, while entitled to choose whether she shall have dower in those given or those received by the husband, cannot have dower in both. But this rule restricting her dower to the lands given or those received applies only when the transaction is an 'exchange' in the strict common-law meaning of the word, involving a mutual grant of equal interests in the respective parcels of land. The rule is in this country occasionally incorporated in a statute."

The application of this rule to the facts stipulated would operate as a bar to the recovery of dower by plaintiff in the lands in question.

For the reasons stated, the judgment appealed from will be reversed and the cause will be remanded, with directions to dismiss the action.

REVERSED AND REMANDED. REHEARING DENIED.

BEAN, BELT and BROWN, JJ., concur.