Argued and submitted December 19, 1984, judgment modified August 7, 1985

In the Matter of the Marriage of

SMITH, fka Harvey,
*Respondent,*

*and*

SMITH,
*Respondent,*

SMITH et al,
*Respondents,*

WISE et al,
*Appellants.*

WESTERN BANK,
*Respondent,*

*v.*

SMITH et al,
*Respondents,*

WISE et al,
*Appellants.*

(DM 82-1-2, C82-6-116; CA A30109)

705 P2d 197

John E. Davis, Grants Pass, argued the cause for appellants. With him on the brief was Calvert & Davis, Grants Pass.

Martin E. Stone, Coquille, argued the cause for respondent Carol Ann Smith. Frederick J. Carleton, Bandon, argued the cause for respondent Naomi Jean Smith. With them on the brief were Slack, Stone and Gillespie, Coquille, and Spady and Carleton, Bandon.

No appearance by respondent John Marshall Smith.

John R. Coutrakon, Brookings, waived appearance for respondent Kerr Hardware.

Jon Littlefield, Coos Bay, waived appearance for respondent Western Bank.

Malcolm J. Corrigall, Coos Bay, waived appearance for respondent Western Mercantile Agency.

Walter H. Grebe, Portland, waived appearance for Englund Marine Supply Co., Inc.

William S. Dames, Medford, waived appearance for respondents Coast Industrial Exchange, Inc. and Senco Products, Inc.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Harold and Irma Wise, beneficiaries under a trust deed securing a $20,000 promissory note, appeal from the judgment entered in these consolidated actions, which determined, in part, that the trust deed was a fraudulent conveyance and therefore is absolutely void. ORS 95.070.[1] On appeal, they assign error to that determination and, in the alternative, contend that because they redeemed the property on which they claimed a lien from the purchasers at an execution sale relating to the foreclosure of a prior trust deed on that property, they now own it, even if their trust deed is void, subject only to any outstanding statutory rights of redemption.

In substance, this appeal concerns the nature, validity and priority of interests claimed in certain real property. Those interests are in question, largely because one John Marshall Smith (Smith) "married" several women *seriatim* without having had any of the preceding marriages dissolved, took title to the property in his and one of his "wives' " names, joined with his co-grantee in a deed of trust to secure a loan from Western Bank, and then executed, alone, the trust deed for the benefit of the Wises in an effort to hinder, delay or defraud his last "wife," who was, at the time of the conveyance, about to become his judgment creditor. To understand the problems, a brief historical account is necessary.

Smith ceremonially married Naomi Jean Smith in 1971; at that time he was married to another woman. Shortly thereafter, the earlier marriage was dissolved. In 1972, he and Naomi, as husband and wife, purchased Lot 13, Winchuck Estates, Unit No. 1, Curry County, Oregon, for $9,900; the deed named them as husband and wife. In 1974, they executed, as husband and wife, a trust deed to secure a $15,000 loan from

---

[1] ORS 95.070 provides:

"Every conveyance or assignment in writing or otherwise of any estate or interest in lands, goods or things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents or profits thereof, made with the intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered with the like intent, as against the person so hindered, delayed or defrauded is void."

Western Bank and built a house on the property. Smith married Carol Ann in 1977, while he was still "married" to Naomi. Then, in 1980, while he was still married to both Carol Ann and Naomi, he began living with Carolyn Wise, daughter of Harold and Irma.

Carol Ann initiated dissolution proceedings against Smith and, in March, 1981, the trial court apparently entered a *pendente lite* order[2] restraining Smith and Carol Ann from transferring or encumbering their respective interests in the property, which was their principal asset. Immediately following the trial, on June 23, 1981, the trial judge announced the property division to be incorporated in a decree: Smith was to keep his interest in the property, subject to a $17,000 judgment lien in favor of Carol Ann. The $17,000 included what the court believed to be one-half of the value of Smith's interest in the property, although the court did not determine what Smith's interest was; it also included a share of other marital assets and attorney fees. The court indicated that the judgment was to be a lien against the property, which was the only real property in which Smith had an interest. For unexplained reasons, the decree was not entered until August 24; however, both Smith and Carolyn Wise were present when the terms of the decree were announced by the court, at which time Smith became very angry and stormed out of the courtroom.

On July 6, 1981, after the property division in the dissolution proceedings between Smith and Carol Ann had been announced, but before the decree was entered, Smith executed and recorded a trust deed covering his interest in the property in favor of Harold and Irma Wise as beneficiaries, purporting to secure a $20,000 promissory note of the same date.

On October 26, 1981, a sheriff's sale of Smith's interest in the property was held on execution on Carol Ann's $17,000 judgment lien; Carol Ann purchased Smith's interest

[2] The *pendente lite* order was not made a part of the record in this proceeding, and there is some question about whether the order was formally entered in the record in the proceedings between Carol Ann and Smith.

at that sale.[3] On February 14, 1983, a sheriff's deed conveyed "all of the interest that John Marshall Smith had in the property" to Carol Ann, the time within which Smith had a right to redeem from the sale having expired. ORS 23.560(1).

In the meantime, on January 12, 1982, Naomi filed one of the instant actions seeking to have her marriage to Smith annulled and asking that she be declared the owner of an undivided one-half interest in the property, subject only to Western Bank's trust deed, and that the property be sold. The owners of recorded interests were named defendants, including Carol Ann and the Wises. Carol Ann filed a cross-claim for declaratory relief against all defendants, requesting that she be declared an owner of an undivided one-half interest in the property, that it be sold and that the proceeds be divided among the parties as their interests and priorities might be determined. She also filed a cross-claim against the Wises for a declaration that the trust deed under which they were beneficiaries was void. The Wises answered by denying that the trust deed was a fraudulent conveyance and asserting their right to foreclose it. They, too, asked for a sale of the property.

On June 30, 1982, Western Bank commenced a judicial foreclosure of its trust deed. The owners of recorded interests were named defendants, including Carol Ann and the Wises, who filed pleadings raising the same matters they had asserted in response to the action filed by Naomi. Western Bank obtained a final judgment and decree of foreclosure pursuant to ORCP 67B after the court had granted its motion for summary judgment against all defendants. That judgment ordered that the property be sold on execution, with any proceeds exceeding the costs of the sale and Western Bank's judgment to be deposited with the court for further distribution among the parties as their interests might appear. The two proceedings were then consolidated on Naomi's motion.

Western Bank purchased the property at the sheriff's

---

[3] The sheriff's certificate of sale recites that:

"The price bid by Carol Ann Smith at the sale was the amount of the Judgment against the respondent ($17,000 together with interest on that sum at the rate of 9 percent per annum from August 24, 1981, to October 26, 1981) and the amount of the costs of the Writ of Execution ($2) and the costs of execution and sale (publication costs of $74.24; sheriff's foreclosure fee of $47; and costs of registered mail $1.53)."

sale on April 25, 1983. As previously noted, Smith's interest had been conveyed to Carol Ann by sheriff's deed on February 14, 1983. Claiming redemption rights as beneficiaries of the trust deed from Smith, the Wises were permitted to redeem the property from Western Bank on June 24, 1983, for $16,126.99, which was the full redemption price.

The interests claimed by the contending parties are: (1) Naomi claims an undivided one-half interest, subject only to the interest of Western Bank; (2) Carol Ann claims an undivided one-half interest, subject only to Western Bank's interest and certain other judgment liens not at issue here; (3) the Wises claim ownership of the property, subject only to other parties' statutory redemption rights, and seek judicial foreclosure of their trust deed. Naomi and Carol Ann jointly resist the Wises' claim on the ground that the trust deed executed and recorded by Smith on July 6, 1981, is void as a fraudulent conveyance; therefore, the Wises derived no rights thereunder and did not have a statutory right as lien creditors to redeem from Western Bank. The trial court concluded that Naomi and Carol Ann had the interests that they claimed, that the Wises' trust deed was "void from the beginning" as a fraudulent conveyance, that the Wises have no interest in the property whatsoever and that the Wises are "entitled [to] amounts voluntarily paid to Western Bank [only] if any Judgment creditor exercises any redemptive right it may have * * *."

Smith executed the trust deed in favor of the Wises under the following circumstances: Irma, since 1960, customarily had mailed Carolyn substantial amounts of money to cover Carolyn's living expenses and, since 1970, had deposited other funds for business purposes in an account they held jointly. During the time that Smith and Carolyn lived together, Irma sent Carolyn substantial sums and she, without the knowledge or consent of her mother, expended an unknown amount of that money for Smith's benefit. No record was made of the amount Smith "borrowed" from Carolyn or of the amounts she paid to Smith's creditors directly. The Wises neither expected nor demanded an accounting from Carolyn for the cash Irma sent her or for the amounts deposited in their joint account.

Apparently, in late May or early June, 1981, Carolyn

told her mother about three specific checks (totalling $2,800) that she had drawn on the joint account payable to Smith. When Irma expressed concern, Carolyn replied that Smith would "provide some security." He had already agreed to pay the Wises $1,000 for a boat motor that they had turned over to him, but he had not done so. Although Smith had made no direct promise to the Wises to pay them any amounts, other than the $1,000, he executed a $20,000 note and the trust deed securing it on July 6; the following day, without knowledge of the trust deed or note, the Wises wired $5,000 to Smith directly.

Before that money was sent, there was a telephone conversation among Irma, Carolyn and Smith, in late May or early June. Although the testimony is highly ambiguous, it is clear that Carolyn requested a loan from her mother on Smith's behalf and that Irma insisted that Carolyn obtain some security from Smith. It is not clear whether the security was to be given to Carolyn to cover all prior advances she had made to or for Smith and also the $5,000, or whether the security was to be given to the Wises. Neither is it clear what form the security was to take. The trial court found that the $5,000 was really another advance to Carolyn; however, the record is clear that the money was sent directly to Smith. Smith testified that during that conversation he told Irma about the dissolution court's decision to award a $17,000 judgment to Carol Ann, but she testified that she did not learn about Carol Ann's interest until Western Bank published its foreclosure notices.

Irma was surprised when she received the promissory note for $20,000 and the trust deed securing it, because she had not been given an accounting for that sum and had never asked that Smith repay a specific amount. We think it is clear that the record does not support a security interest to the extent of $20,000; on the other hand, the record does support a security interest to the extent of the $1,000 Smith had agreed to pay the Wises for the motor, $2,800 Smith received from Irma's and Carolyn's joint bank account and the $5,000 the Wises loaned to Smith.

■■ The Wises correctly point out that a debtor may prefer one creditor over another, and they contend that that is all that occurred here. *See Nelson v. Hansen,* 278 Or 571, 565

P2d 727 (1977). However, we are satisfied that sufficient indicia of fraud attended the conveyance to warrant the conclusion that the trust deed for the Wises' benefit was a conveyance intended to hinder, delay or defraud creditors; in particular, it was intended to prevent Carol Ann from satisfying her judgment. *See generally Evans v. Trude,* 193 Or 648, 654-57, 240 P2d 940 (1952); ORS 95.070. At the very best, the amount that the Wises claimed to be secured was grossly overstated. *See Willamette Grocery Co. v. Skiff et al,* 118 Or 685, 690-91, 248 P 143 (1926); *Grant County Bank v. Hayes,* 76 Or 407, 413, 149 P 473 (1915); *Ball v. Danton,* 64 Or 184, 199-200, 129 P 1032 (1913). Even though Irma could not count herself among Smith's numerous "in-laws," the relationship between her and Smith was not arm's length; accordingly, we scrutinize the transaction closely. *See Branchfield, Trustee v. McCulley et al,* 192 Or 270, 277-78, 231 P2d 771, 235 P2d 334 (1951). In addition, the trust deed was executed in violation of a *pendente lite* order and in anticipation of the judgment that was about to be entered in the dissolution proceeding between Carol Ann and Smith, and it involved substantially all of Smith's assets and the only asset against which the judgment would be a lien. *See American Surety Co. v. Hattrem,* 138 Or 358, 365, 3 P2d 1109, 6 P2d 1087 (1932); *Crocker v. Russell,* 133 Or 213, 220, 287 P 224 (1930).

■ In the light of those suspicious circumstances indicative of a fraudulent conveyance, and considering the conflicting testimony about when Irma knew about Carol Ann's judgment, we conclude that it was incumbent on the Wises to demonstrate the *bona fides* of the security transaction. *See Nelson v. Hanson, supra,* 278 Or at 578; *Bivens v. Hancock,* 71 Or App 273, 279, 692 P2d 153 (1984). The trial court concluded that they did not do so, and on *de novo* review we find no reason to disagree with that conclusion. Although the Wises may not have intended to hinder Carol Ann in the collection of her judgment, the record indicates that they were aware of Smith's intention to do so. Even if they had a basis for claiming a lien for $8,800, they had no basis for claiming one for $20,000.[4] The trust deed was a fraudulent conveyance.

---

[4] If the trust deed secured nothing, the Wises would have no rights to enforce as beneficiaries and, presumably, they would not be lien creditors with redemption rights. The Wises' contention that the consideration for the note included the three checks totalling $2,800 given by *Carolyn* to Smith, the $5,000 loan to Smith on June 7, which

 However, it does not follow that the trust deed is absolutely void or, as the trial court concluded, that it was "void from the beginning." ORS 95.070 provides that a conveyance such as this one is void "as against the person so hindered, delayed or defrauded * * *." That does not mean that the conveyance is a legal nullity. On the contrary, as between the parties, the conveyance is good; *See, e.g., Barhan v. Bogard et al.,* 128 Or 218, 222-23, 270 P 762 (1929); *Bradtfeldt v. Cooke,* 27 Or 194, 201, 40 P 1 (1895); it is only "void" as to persons hindered, delayed or defrauded thereby. Although the cases are not entirely clear, we conclude that when, as here, a transfer is for security, it is void only to the extent that the person seeking to set it aside is hindered, delayed or defrauded. *See generally Windle, Adm'x et al. v. Flinn et al.,* 196 Or 654, 672, 251 P2d 136 (1952).

 Accordingly, it is necessary to determine the extent to which Naomi or Carol Ann has been hindered, delayed or defrauded by the conveyance. The property was initially conveyed to Naomi and Smith as husband and wife. As the trial court concluded, that marriage was void, because Smith was already married to another person. ORS 106.020(1). As between themselves, Naomi and Smith held the property as tenants in common and not by the entireties. *Emmons et al v. Sanders et al,* 217 Or 234, 246, 342 P2d 125 (1959), *overruling Twigger v. Twigger,* 110 Or 520, 223 P 934 (1924); ORS 93.180.

 When Naomi and Smith, as husband and wife, executed the deed of trust to secure their loan from Western Bank, the bank, as a purchaser for value without notice of their true status, acquired a security interest in the entirety of the property rather than in two undivided one-half interests. It was entitled to rely on the recitals in the original deed and in the deed of trust. *Emmons et al v. Sanders et al, supra.* Because the parties agree that when Carol Ann acquired Smith's interest by sheriff's deed, she became a tenant in common

---

is not expressly secured by the trust deed, and Smith's promise to pay $1,000 for the boat motor is made to avoid the conclusion that the trust deed was a fraudulent transfer and that it gave them the right to redeem. However, the disparity between the amount of the actual security interest claimed and the amount of the note, together with the other circumstances surrounding this transfer, invites suspicion, even if their contention is correct.

with Naomi, we will not pursue an analysis of their interests.[5]

■ When Western Bank foreclosed its trust deed, which all concede had priority, the interests of Naomi and Carol Ann (as Smith's successor in interest) were foreclosed, subject to their statutory rights, as debtors, to redeem from the purchaser, Western Bank. Because the bank had acquired the whole property, it could not be compelled to permit a redemption of less than the whole estate. Accordingly, neither Naomi nor Carol Ann was entitled to redeem an undivided one-half interest only by paying a proportionate share of the redemption amount. *But see Monese v. Struve,* 155 Or 68, 82-84, 62 P2d 822 (1936) (when the owners of easement on land subject to mortgage were made parties to proceedings to foreclose, but mortgagors were not made parties, owners were allowed by equity court to pay a share of the mortgage debt proportionate to the value of the easement and redeem their interest). Although it may be possible for one co-tenant to purchase the interest of another co-tenant "at a public sale thereof under legal process running against the property of the co-tenant," *Webster v. Rogers,* 87 Or 547, 556-57, 171 P 197 (1918), the result is not the same when one co-tenant redeems from a purchaser at a sheriff's sale following a foreclosure of a mortgage on the entire estate. *See generally Flett v. Willeford,* 114 Or 80, 89, 234 P 802 (1925).

■ In the present case, Naomi and Carol Ann, or either of them, had the right to redeem from Western Bank by paying the purchase amount and other sums required by ORS 23.560, within one year from April 25, 1983, the date when the bank purchased the property at the foreclosure sale. When the Wises intervened by redeeming from Western Bank, they hindered at least one of the co-tenants, Carol Ann, by claiming priority for their lien; their redemption, as such, did not hinder, delay or defraud anyone. The Wises do not disagree with that proposition if we conclude that the transfer was fraudulent; their position is, as we have concluded, that, even if it was fraudulent, the transfer is not absolutely void. They argue that the remedy is to permit either or both of the co-

---

[5] Agreement of the parties as to the status of the ownership of Carol Ann and Naomi suggests that, at the time when Carol Ann obtained her judgment against Smith, she was aware that he and Naomi were not legally married and, for that reason, sought a dissolution rather than an annulment.

tenants to redeem from them by paying them the amount that they paid Western Bank to redeem.

 However, that argument assumes that the Wises had the right to redeem from the bank, which, in turn, assumes that their lien, in whatever amount, was superior to Carol Ann's judgment. To assume that would be to permit the Wises' lien to hinder, delay or defraud Carol Ann. Accordingly, we hold that the Wises' lien was junior to Carol Ann's judgment lien. Because it was junior to the judgment, the Wises had the right to redeem from Carol Ann, who purchased Smith's interest on execution of her judgment. They did not do so, and the time within which they could have redeemed had long since expired when they purported to redeem from the bank; at that time, they had no enforceable lien on the property, although they had a claim against Smith personally. If Smith had redeemed, Carol Ann's judgment would have been satisfied and the Wises' lien would have continued as to Smith's interest. However, he did not redeem.

It follows that the Wises did not have the right to redeem from the bank. The question remains as to what effect their purported redemption has on the disposition of the case. The trial court held that Naomi and Carol Ann were each the owners of an undivided one-half interest in the property, free of any interest of the Wises without the necessity of payment of any sum to the Wises, even though either of them would have been required to pay the same amount as that paid by the Wises in order to have redeemed from the bank if the Wises had not interfered.

 Because that result appears to us to be harsh and unnecessary to remedy the wrong, and because these proceedings are equitable in nature, we dispose of the case differently. If the Wises had claimed no lien on the property and had simply purchased it from the bank after the bank purchased it on execution, subject to redemption rights, Naomi or Carol Ann would have been required to redeem from them by paying the statutory redemption price. Although the redemption statutes are not applicable to this situation, we perceive no reason why, as a matter of equity, the Wises should not be reimbursed the amount that they paid the bank, treating them

as purchasers from the bank.[6] Neither Naomi nor Carol Ann is entitled to the property free of charge.

Naomi and Carol Ann had the right to redeem within one year from April 25, 1983. The Wises hindered the exercise and value of that redemption right on June 24, 1983, when they redeemed from Western Bank and claimed a priority for their lien, at least as to Carol Ann. It is at least possible that either Naomi or Carol Ann would have redeemed from the bank if the Wises had not interfered with their doing so. On the assumption that one or both of them would have redeemed at the last permissible moment, they would have been required to pay Western Bank interest for that one year. When the Wises redeemed, they paid part of that interest, which was included in the $16,129.99 that they paid the bank, and they are entitled to be reimbursed at least that amount. The question is how much, if any, more interest Naomi or Carol should be required to pay them.

Given our assumption, we conclude that they should be required to pay the Wises the same amount that they would have had to pay the bank if they had redeemed from it at the last moment—that is, interest for one year from April 25, 1983. After that time, they should not be required to pay interest, because their statutory redemption rights had expired without their being able to redeem, as we have assumed that they would have done, because of the Wises' interference. Further, they must pay any real property taxes or assessments that the Wises have paid with respect to the property, because the payment of those charges protected the interest of all parties claiming rights in it. In the event that only one of them pays the price, the tenancy in common is restored, with the right of contribution against her co-tenant for one-half of the redemption price. *See Palmer v. Protrka,* 257 Or 23, 476 P2d 185 (1970).

Accordingly, we modify the judgment to permit either Naomi Jean Smith or Carol Ann Smith, or both of them, within 90 days of the effective date of the modified judgment, to purchase the property from the Wises by paying them the

---

[6] Although the bank may have reason to complain that it would not have sold the property to the Wises for the statutory redemption price if they did not have the right to redeem, it is not complaining.

amount that they would have had to pay Western Bank if they had redeemed from it on April 24, 1984, together with any taxes or assessments paid by the Wises; if the Wises are so paid, the trial court shall direct the sheriff to issue a deed to Naomi Jean Smith and Carol Ann Smith as tenants in common, subject to the liens set forth in the trial court judgment. If neither Naomi Jean Smith nor Carol Ann Smith pays the Wises as required, each of their interests in the property shall cease. As so modified, the judgment is affirmed; the case is remanded to enter a modified judgment and for further proceedings not inconsistent with this opinion.